# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATIONAL STEEL CAR LIMITED, | ) <br> ) <br> ) C.A. No. 1:24-00594-JLH-CJB |
| Plaintiff, | ) <br> ) |
| v. | ) REDACTED PUBLIC VERSION <br> ) |
| FREIGHTCAR AMERICA, INC., FREIGHTCAR NORTH AMERICA, LLC, JAC OPERATIONS INC., and FCA-FASEMEX, LLC | ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**DEFENDANTS' OPENING LETTER BRIEF IN SUPPORT OF THEIR
MOTION FOR LEAVE TO AMEND ANSWER
TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS**

*Of Counsel*

Brian C. Horne (*Pro Hac Vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 601-1263
Brian.Horne@knobbe.com

Sean M. Murray (*Pro Hac Vice*)
Justin J. Gillett (*Pro Hac Vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Sean.Murray@knobbe.com
Justin.Gillett@knobbe.com

PHILLIPS, MCLAUGHLIN & HALL, P.A.

John C. Phillips, Jr. (#110)
David A. Bilson (#)
1200 North Broom Street
Wilmington, DE 19806-4204
Telephone: (302) 655-4200
Facsimile: (302) 655-4210
jcp@pmhdelaw.com
dab@pgmhlaw.com

*Attorneys for Defendants FreightCar America, Inc., FreightCar North America, LLC, JAC Operations Inc., and FCA-FASEMEX LLC*

Dated: September 19, 2025

Dear Judge Burke:

Defendants (collectively "FreightCar America") respectfully seek leave to amend their answer to the Second Amended Complaint to add a defense and corresponding counterclaim that inequitable conduct renders the asserted patents unenforceable. The proposed amended pleading is attached as Exhibit A, and a blackline comparison to the operative pleading (D.I. 68) is attached as Exhibit B.

**A.     The named inventors deliberately withheld National Steel Car's own prior-art railcars from the PTO so the PTO would continue to believe the claimed sidewall stiffener was novel, when it was in fact decades old.**

FreightCar America and Plaintiff National Steel Car (NSC) make railcars. NSC accuses FreightCar America of infringing U.S. Patent 8,166,892 and its child, U.S. Patent 8,132,515, which claim a subset of railway freight cars. Both patents list NSC employees Forbes, Thiesen, and Keats as inventors. (Ex. A Counterclaims ¶¶ 32–33.)

The '892 patent claims recite a stiffener for a railcar sidewall, where the stiffener has an upper portion on the railcar's interior ("laterally inboard") and a lower portion on the exterior ("laterally outboard") and the two portions are vertically aligned (have "web continuity"). (*Id.* ¶¶ 35–38 (illustrating with diagrams).) This sidewall stiffener was the key to allowance. The PTO examiner explained that he allowed the '892 patent because he thought this claimed sidewall stiffener was absent from the prior art. (*Id.* ¶¶ 39–40.)

But the claimed sidewall stiffener had been known in the art for decades. (*Id.* ¶ 45.) In fact, *NSC itself had made railcars with the supposedly novel stiffener*. Decades earlier, NSC had sold 50-ton center-discharge ore cars with the very same stiffener the PTO thought was novel and nonobvious. (*Id.*) NSC advertised these ore cars in the 1946 Car Builders' Cyclopedia Of American Practice ("Cyclopedia"), a key industry publication. (*Id.* ¶¶ 46–52.) The 1946 Cyclopedia includes detailed schematics showing the NSC 50-ton center discharge ore car embodied *every* limitation of claim 1 of the '892 patent. (*Id.*)

FreightCar America can now plausibly allege that Forbes, Thiesen, and Keats deliberately withheld this prior art to deceive the PTO. During prosecution of the '892 patent, NSC submitted excerpts of the 1937, 1943, 1957, 1961 and 1966 editions of the Cyclopedia. (*Id.* ¶ 55.) But NSC did *not* submit excerpts from the 1946 Cyclopedia, the edition that contained detailed schematics of the NSC ore car. From emails NSC produced at the end of July 2025 (Ex. C), it is now clear that Forbes, Thiesen, and Keats regularly consulted the Cyclopedias when designing railcars for NSC. And it is now clear that they were the individuals who decided which editions of the Cyclopedias to disclose to the PTO and who selected the excerpts that NSC disclosed. (Ex. A Counterclaims ¶¶ 53–55.) The excerpts Forbes, Thiesen, and Keats chose to disclose to the PTO depicted ore cars, but none of the submitted excerpts showed the NSC 50-ton center-discharge ore car that anticipated claim 1. (*Id.* ¶ 55.) Moreover, in a recent interrogatory response, NSC provided no innocent explanation for the named inventors' failure to disclose NSC's own ore car. (Ex. D.)

The named inventors' inequitable conduct infects the child '515 patent, which has substantially the same specification and includes claims with nearly identical sidewall stiffener

limitations. (Ex. A ¶¶ 59–62.) NSC has asserted those claims against FreightCar America, and its infringement contentions show it is reading those claims broadly enough to encompass the stiffeners in the withheld prior-art NSC 50-ton center discharge ore cars. (*Id.* ¶¶ 63–65.)

**B.     Good cause exists for granting FreightCar America leave to plead the named inventors' inequitable conduct.**

The deadline for moving to amend the pleadings was March 27, 2025. (D.I. 38.) The first question on this motion is therefore whether good cause exists under Rule 16(b)(4). *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). That inquiry hinges on the movant's diligence. *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 371 (D. Del. 2009).

FreightCar America diligently filed this motion after obtaining the information necessary to allege inequitable conduct in good faith. Because inequitable conduct sounds in fraud, FreightCar America needed factual allegations that could satisfy Rule 9(b). *Id.* That rule requires pleading "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). FreightCar America therefore needed a good-faith basis for plausibly alleging sufficient facts from which a court could reasonably infer the named inventors "knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (*en banc*).

On July 17, 2025, NSC responded to FreightCar America's Interrogatory 15, which asked NSC to explain why no one disclosed to the PTO the NSC ore car shown in the 1946 Cyclopedia, particularly after the PTO examiner gave his reasons for allowance. (Ex. D.) NSC objected and offered no explanation for the failure to disclose the prior-art ore car. (*Id.*)

On July 28, 2025, NSC produced the emails attached as Exhibit C. NSC produced these emails in response to requests for production that FreightCar America served in December 2024, well before the March 2025 deadline for requests to amend pleadings. These emails document that, in the course of designing a railcar for NSC, Keats and Forbes searched Cyclopedias for earlier railcar designs and discussed doing so with others, including Thiesen. As NSC engineers, Forbes, Thiesen, and Keats likely would have been familiar with NSC's prior ore cars. But the emails produced on July 28 confirmed this and gave FreightCar America a reasonable basis to allege the named inventors were the ones responsible for the fraud on the PTO.

After receiving NSC's interrogatory response, FreightCar America contacted NSC in July about amending these pleadings. After NSC requested a draft of the pleadings, and after NSC produced the emails attached as Exhibit C, FreightCar America promptly reviewed the materials and began drafting amended pleadings. FreightCar America presented the proposed amended pleadings to NSC on September 9 and asked NSC to either stipulate to the amendment or make itself available to confer. (Ex. E.) When NSC refused to so stipulate and continued to refuse after conferring on September 16, FreightCar America filed this motion.

This case resembles *Cordance*. In that case, nearly seven months after the then-current deadline (and sixteen months after the original deadline), Amazon sought leave to amend its pleadings to add inequitable-conduct theories. *Cordance*, 255 F.R.D. at 369–70. Amazon based its

new pleadings on deposition testimony it obtained in the preceding month or two. *See id.* at 372. The court found Amazon had demonstrated good cause to amend in part because Amazon sought leave "shortly after it was able to satisfy the pleading requirements of Rule 9(b)." *Id.* at 374.

Here, FreightCar America raised the prospect of amending the pleadings on July 18, immediately after NSC refused to substantively answer Interrogatory 15 and less than four months after the original deadline to amend. (Ex. E.) A little more than six weeks after receiving NSC's document production that included the emails in Exhibit C, FreightCar America sent NSC the proposed amended pleading. Like Amazon in *Cordance*, FreightCar America sought leave shortly after receiving materials providing it with a sufficient, good-faith basis to allege the requisite knowledge and deceptive intent under Rule 9(b), and it has therefore shown good cause to amend.

**C.     Under the liberal standard of Rule 15, the Court should grant leave to amend.**

Rule 15(a)(2) states that a "court should freely give leave [to amend] when justice so requires." The Supreme Court has described this rule as a "mandate." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Third Circuit has stated: "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). "The liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case." *Id.* at 206.

While undue delay, bad faith, and futility may justify denying leave to amend, prejudice to the nonmoving party is the "touchstone" for the Rule 15 analysis. *Id.* at 204. Granting leave to amend here will not prejudice NSC. Under the current schedule, the parties have over five months to complete fact discovery. The parties have not yet agreed on ESI search terms or conducted any depositions. The claim construction hearing is set for November 18, 2025. Dispositive motions are not due for another nine months, at the end of June 2026. And trial will not begin until 2027. The schedule gives the parties abundant time to prepare their cases on inequitable conduct, and NSC would suffer no prejudice from the proposed amendment.

In addition, because FreightCar America was diligent in moving to amend, this case involves no undue delay that would warrant denying leave to amend. *See Arthur*, 434 F.3d at 204–05. Nor is bad faith or futility a basis for denying leave to amend. FreightCar America acted responsibly by waiting to allege inequitable conduct until it had a good-faith basis to do so. And FreightCar America has prepared a strong case of inequitable conduct based on the inventors' concealment of NSC's own prior art, even after the examiner stated his reason for allowing the patent. FreightCar America thus seeks leave in good faith, and the amendment it proposes is not futile. *Cf. id.* at 204 ("the amended complaint presented a valid claim"; the "District Court did not state, and the record does not suggest, that Arthur acted in bad faith or with improper motive").

Therefore, FreightCar America respectfully submits that the Court should grant it leave to file its proposed amendment.

-4-

        Respectfully,

        */s/ John C. Phillips, Jr.*

        John C. Phillips, Jr. (#110)

cc:    All counsel of record (by CM/ECF & email)