IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATIONAL STEEL CAR LIMITED, | ) ) ) C.A. No. 1:24-00594-JLH-CJB ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| FREIGHTCAR AMERICA, INC., FREIGHTCAR NORTH AMERICA, LLC, JAC OPERATIONS INC., and FCA-FASEMEX, LLC | |
| Defendants. | |

**DEFENDANTS' OPENING LETTER BRIEF IN SUPPORT OF THEIR MOTION FOR STAY PENDING *INTER PARTES* REVIEW**

*Of Counsel*

Brian C. Horne (*Pro Hac Vice*)
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 601-1263
Brian.Horne@knobbe.com

Sean M. Murray (*Pro Hac Vice*)
Justin J. Gillett (*Pro Hac Vice*)
KNOBBE, MARTENS, OLSON & BEAR 2040
Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Sean.Murray@knobbe.com
Justin.Gillett@knobbe.com

PHILLIPS, MCLAUGHLIN & HALL, P.A.

John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE 19806-4204
Telephone: (302) 655-4200
Facsimile: (302) 655-4210
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Attorneys for Defendants FreightCar America, Inc., FreightCar North America, LLC, JAC Operations Inc., and FCA-FASEMEX, LLC*

Dated: December 29, 2025

Dear Judge Burke:

FreightCar America moves to stay this patent case pending *inter partes* review of the asserted patents. On December 16, 2025, the Patent Trial and Appeal Board (PTAB) instituted *inter partes* review of every claim of U.S. Patent Nos. 8,166,892 and 8,132,515, the only two patents asserted in this case. For reasons of judicial efficiency, the Court should now stay this case until the PTAB has determined whether the asserted claims should be cancelled.

Courts have adopted a "liberal policy in favor of … stays pending instituted IPR proceedings." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 3943058, at *4 (D. Del. Aug. 21, 2019) (collecting cases). This Court considers three factors when deciding a motion to stay: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Contour IP Holding, LLC v. GoPro, Inc.*, 2016 WL 4474340, at *2 (D. Del. July 14, 2016) (Burke, M.J.). All three factors support staying this case.

**Factor 1: A Stay Would Simplify The Case**

A stay would simplify this case because the IPRs would likely eliminate many or all of the asserted claims. Indeed, the IPRs have already disposed of one asserted claim by spurring NSC to statutorily disclaim claim 1 of the '892 patent. Ex. 1 at 2, 8; Ex. 4 at 1. Elimination of additional claims in the IPRs is likely. In its decision denying NSC's motion for discretionary denial of the IPR petitions, the Patent Office found "persuasive reasoning, supported by evidence, that the [Patent] Office materially erred during prosecution" of the '892 patent. Ex. 3 at 2–3. The PTAB subsequently instituted IPR on every claim of the asserted patents except the one NSC had already disclaimed. Ex. 1 at 37–38; Ex. 2 at 33–34; Ex. 4 at 1.

When the parties met and conferred on December 18, 2025, NSC argued that many claims of the '515 patent will likely survive *inter partes* review. NSC relied on statements by the PTAB that the petition did not show the prior art disclosed three claim limitations. But the PTAB made those statements to help the parties focus their IPR papers on three claim limitations among the dozens of limitations in the '515 patent's 44 claims. Ex. 2 at 23 ("For the benefit of the parties, we provide below our preliminary analysis of the other challenged independent claims based on the record before us."). Thus, NSC's assertion that claims of the '515 patent will survive IPR is pure speculation. Indeed, that the PTAB focused the parties on three minor limitations and not on the patent's allegedly novel feature – a machinery space free of elephant ears or other support structures – suggests that all claims of the '515 patent are likely to be invalidated during the IPR proceeding.

Even if some claims of the '515 patent survive *inter partes* review, a stay would meaningfully simplify this case. For example, "efficiencies will be gained via estoppel as to certain defenses, even if some claims from one or both of the [asserted] patents survive." *NEC Corp. v. Peloton Interactive, Inc.*, No. 1:22-cv-00987, D.I. 210 at 4 (D. Del. Apr. 9, 2024) (Burke, M.J.) (Ex. 7). Further, NSC's patentability arguments in the IPRs will constitute additional prosecution history that could limit the claims. *See IOENGINE*, 2019 WL 3943058, at *10; *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[S]tatements made

by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."). The Court would also benefit from the PTAB's expert guidance on any surviving claims. *See, e.g.*, *IOENGINE*, 2019 WL 3943058, at *10 (collecting cases finding that the Patent Office's expert guidance is invaluable to courts even when the IPR does not invalidate all claims).

Simplification is even more likely because of the extensive overlap between the '892 patent and any surviving claims of the '515 patent. The asserted patents have a parent-child relationship, share a common specification and abstract, and name the same inventors. D.I. 1-1, Ex. A ("'892 patent") and Ex. B ("'515 patent"). The patents' claims are all directed to a "railroad hopper car" and recite many of the same standard railcar features. For example, claim 2 of the '892 patent and claim 32 of the '515 patent each claim a hopper, trucks, sidewalls, a slope sheet, a draft sill, a bolster, a truck center, a striker, a shear plate, first and second crosswise beams, and an end section free of elephant ears. Similarly, claim 5 of the '892 patent and claim 44 of the '515 patent each claim a side sill, a top chord, a side wall with three regions, a two-part sidewall stiffener, web continuity between the two parts of the stiffener, and a transition portion of the sidewall "located a distance above said [first] side sill that is in the range of 1/4 to 2/3" the height of the sidewall. Indeed, entire limitations and claims in the '515 patent were copied from the '892 patent with only slight rephrasing. *See* Ex. 6 (automated redline showing similarity between '892 patent claims 1, 3–4, and 6–7 and '515 patent claims 40–44). "In light of this similarity between the patents, it seems likely that the parties may take positions in the IPR regarding the ['892] patent that could end up impacting the Court's later analysis regarding the ['515] patent." *NEC*, No. 1:22-cv-00987, D.I. 210 at 3 (D. Del.); *accord Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 1:19-cv-01334, D.I. 253 (D. Del. Dec. 10, 2020) (Burke, M.J.) (Ex. 8).[1]

Finally, the timing of the IPR proceedings supports staying this case. Final written decisions in the IPRs are due on December 16, 2026—less than one month before trial is scheduled to begin on January 11, 2027 in this case (D.I. 38 at 20). "This provides for the prospect of a hectic and disjointed pre-trial process if no stay is instituted—were the PTAB to issue its decisions on the eve of trial." *NEC*, No. 1:22-cv-00987, D.I. 210 at 3 (D. Del.).

For all of these reasons, the "simplification of issues" factor favors a stay. *See Midwest*, No. 1:19-cv-01334, D.I. 253 (D. Del.) (staying the case pending IPR even though the PTAB had instituted IPR on only two of the five patents in suit and, even for the instituted patents, did not institute review on two asserted claims); *Contour*, 2016 WL 4474340, at *2 (granting stay pending IPR even though eight claims in one of the two asserted patents were not at issue in the IPR).

**Factor 2: Fact Discovery Is Ongoing And Trial Is More Than A Year Away**

This case is still in its early stages. Written discovery has been slowed by numerous discovery disputes requiring dozens of conferences of counsel and multiple letters to the Court. As a result, the parties have not taken any depositions or even finished producing documents.

---

[1] For example, the IPRs will likely force NSC to take a position regarding whether a structure can be "made of flat bar," as claimed in the '892 patent, even if the flat bar is bent when the railcar is manufactured. *See* Ex. 5 at 124:15–127:23, 140:16–145:22, 149:2–152:14 (transcript of claim construction hearing in which NSC reserved the right to take a position on the issue).

Indeed, they have not even reached agreement on the search terms they will use to electronically search their documents. That issue is at the heart of the letter the parties filed last week requesting a discovery dispute conference with the Court. D.I. 179 .

Much remains to be done in this case. Fact discovery is ongoing, expert discovery has not begun, and the trial date is a year away. D.I. 38 at 19–20 (setting trial for on January 11, 2027). The parties have yet to (i) take fact depositions, including a deposition NSC wishes to take in Canada through the Court's letter rogatory; (ii) exchange final infringement and invalidity contentions; (iii) serve expert reports and depose the experts; (iv) file dispositive and *Daubert* motions; (v) file motions *in limine*, the joint proposed pretrial order, and other pretrial papers; and (vi) prepare their witnesses for trial and conduct the trial. Further, the following motions are pending: NSC's motion to compel (D.I. 117); FreightCar America's motion to amend its answer and counterclaims (D.I. 121); NSC's motion for leave to file a sur-reply (D.I. 148); and FreightCar America's motion to compel (D.I. 151). In addition, as noted above, the parties have requested a discovery dispute conference with the Court to address ESI search terms and few other intractable disputes. D.I. 179. Accordingly, the "status of the litigation" factor favors a stay. *See Midwest,* No. 1:19-cv-01334, D.I. 253 (D. Del.) (staying a case that was still "in its early stages").

### Factor 3: A Stay Would Not Unduly Prejudice Or Tactically Disadvantage Plaintiff NSC

A short delay while the case is stayed would not cause NSC undue prejudice. The accused railcar was specifically designed for one customer – Canadian National – and the only sale of that railcar occurred before this lawsuit. D.I. 56 ¶ 39. Because the accused railcar is not being marketed or sold, a stay would not allow additional sales to take place. Thus, "Plaintiff will later be able to seek full relief for infringement via a monetary damage award." *NEC*, No. 1:22-cv-00987, D.I. 210 at 4 (D. Del.).

Nor is the timing of the motion to stay an attempt to gain a "clear tactical advantage." *See id.* FreightCar America filed its IPR petitions about two-and-a-half months after receiving NSC's initial infringement contentions asserting 57 patent claims. Ex. 4. This was reasonable. As the Court has explained, "accused infringers often understandably want to have a good handle on what the scope of the district court litigation will be before they file an IPR petition." *NEC*, No. 1:22-cv-00987, D.I. 210 at 1–3 (D. Del.) (citation and punctuation omitted). FreightCar America now promptly moves for a stay shortly after the PTAB's December 16, 2025 institution decisions. Ex. 1; Ex. 2.

Finally, NSC's own conduct demonstrates that it would not be prejudiced by a short stay. After discovery opened in this case, NSC waited almost three months before serving any discovery requests, and it finally did so only in response to FreightCar America's discovery. Gillett Decl. ¶ 2. This Court has held that the third factor favors a stay where the "Plaintiff was not in a big hurry to get this case started." *NEC*, No. 1:22-cv-00987, D.I. 210 at 4 (D. Del.). Accordingly, all three factors support staying this case until the IPRs have concluded.

-4-

                        Respectfully,

                        */s/ John C. Phillips, Jr.*

                        John C. Phillips, Jr. (#110)

cc:    All counsel of record (by CM/ECF & email)