## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATIONAL STEEL CAR LIMITED,     ) | C.A. No. 1:24-00594-JLH-CJB |
| Plaintiff,    ) | |
| v.    ) | **REDACTED - PUBLIC VERSION** |
| FREIGHTCAR AMERICA, INC., FREIGHTCAR NORTH AMERICA, LLC, JAC OPERATIONS INC., and FCA-FASEMEX, LLC    ) | |
| Defendants.    ) | |

**DEFENDANTS' LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
PURSUANT TO D.I. 187**

*Of Counsel*

Brian C. Horne (*Pro Hac Vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 601-1263
Brian.Horne@knobbe.com

Sean M. Murray (*Pro Hac Vice*)
Justin J. Gillett (*Pro Hac Vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Sean.Murray@knobbe.com
Justin.Gillett@knobbe.com

PHILLIPS, MCLAUGHLIN & HALL, P.A.

John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE  19806-4204
Telephone:  (302) 655-4200
Facsimile:  (302) 655-4210
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Attorneys for Defendants FreightCar America, Inc., FreightCar North America, LLC, JAC Operations Inc., and FCA-FASEMEX LLC*

Dated: January 12, 2026

Dear Judge Burke:

FreightCar America ("FCA") submits this letter pursuant to the Court's January 2, 2026 order (D.I. 187) to address the following discovery issues raised by FCA.

### NSC should run search terms 1 and 8 that FCA selected pursuant to Default Standard ¶ 5.b.

Pursuant to the Default Standard, FCA identified search terms for NSC's ESI. Ex. 3 at 1; Ex. 1 ¶ 5(b) (Default Standard). During the five months that followed, FCA conferred with NSC on terms 1 and 8 at least four times,[1] sent NSC at least eight letters discussing those terms,[2] and narrowed the terms multiple times.[3] FCA now seeks an order compelling NSC to use FCA search terms 1 and 8, as narrowed, in searching its ESI.

Search Term 1. Term 1 targets NSC documents referring to FCA or its railcars. These documents are central to the parties' dispute and responsive to FCA's RFP No. 4. Ex. 2 at 7-8. Narrowed term 1 reads as follows:

> ("Freight Car" OR FreightCar* OR FCA*) AND ("Canadian National" OR CN*
> OR presentation* OR slide* OR report* OR inspect* OR "site visit" OR analy*
> OR compar*)

Narrowed term 1 does not broadly seek all documents mentioning FCA. Rather, it uses a second clause that narrows the term to three categories of documents that mention FCA. In the first category, the words "Canadian National" and "CN*" target documents referring to the customer that purchased both FCA's accused railcars and NSC's patent-practicing railcars. The second category uses "presentation*," "slide*," "report*," "analy*" and "compar*" to target documents containing analysis of or comparisons to FCA's railcars. Finally, the words "inspect*" and "site visit" target documents relating to NSC's inspections of FCA railcars. Such documents are relevant to rebut NSC's contention that inspecting a competitor's product is improper and evidence of willful infringement.

This Court has approved search terms that contain company or product names but use a second clause to narrow the term. In *Confluent Surgical, Inc. et al. v. HyperBranch Medical Technology, Inc.*, the defendant moved to compel a search term that included company and product-line names "Micromedics" or "Hemaedics" or "Nordson" or "Fibrijet." No. 1:17-cv-00688 (D. Del. Aug. 23, 2018) (Burke, M.J.) (Ex. 13). The Court granted that motion but required the defendant to "add at least one additional limiting term to each such search term (e.g., 'Hemaedics' AND '____'." *Id.*

NSC proposes appending a third clause as follows: AND (("open hopper"~3) OR "ore car" OR jenn*). Ex. 19 at 2.[4] The Court should reject this proposal. The first two clauses already sufficiently narrow results to NSC documents referencing both FCA and at least one term

---

[1] Ex. 6 at 1; Ex. 8 at 2; Ex. 10 at 1; Ex. 12 at 1.

[2] Ex. 4 at 2-3; Ex. 5 at 1-2; Ex. 6 at 1-2; Ex. 7 at 1; Ex. 8 at 1-2; Ex. 10 at 2; Ex. 11 at 1; Ex. 12 at 1-2.

[3] Ex. 5 at **; Ex. 6 at 1-2; Ex. 7 at 1; Ex. 8 at 1.

[4] A jenny is a railcar with an open-top hopper and bottom discharge. D.I. 1 ¶ 12.

indicating relevance to this case.  *See Confluent*, No. 1:17-cv-00688 (D. Del. Aug. 23, 2018). NSC's documents may refer to FCA itself in an analysis of market share or market position.  They may also refer to FCA rail cars as "freight car," "gondola cars," "hopper cars," "railcars," "rail cars" or simply "cars."  *See, e.g.*, '515 patent (D.I. 1-2, Ex. B) at 23:8-32:21 (all claims reciting "railroad ***hopper cars***"), 1:19-20 (stating that the patent "relates to the field of railroad ***freight cars***, and, in particular to rail road ***gondola cars***"), 12:6 (referring to a "***railcar*** unit"), 1:30-31 (stating that the "particulate material exits ***the car*** under the influence of gravity) (emphasis added).  NSC's proposal would exclude all such documents merely because they do not also explicitly refer to ore cars or jennies.[5]

The discovery FCA seeks through term 1 is relevant to at least obviousness, damages and willfulness and is proportional to the needs of the case.  NSC argues that the term produces too many hits, but it concedes that the search identifies fewer than 90,000 documents, even when email attachments are counted as separate documents.  Ex. 9 at 1.  Moreover, if term 1 produces 90,000 hits, that is because NSC has 90,000 relevant documents that mention FCA.  NSC should have produced those documents long ago, without requiring FCA to participate in four meet and confers before seeking relief from the Court.

Search Term 8.    Term 8 is narrowly tailored to identify documents discussing improvements or advantages related to the rail cars at issue in this case:

> (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (improve* OR advantage*)

NSC proposes removing the words "freight car" OR "gondola car".  Ex. 19 at 3.  But as discussed above, the asserted patents themselves refer to the patented rail cars as "freight cars" and "gondola cars."  Thus, NSC has no basis for excluding documents that refer to improvements or advantages related to those cars.  It should be compelled to use the search term as written.

**The Court should compel a response and production for RFPs 61-63, 66-68, 71, and 73-74.**

These requests seek information relevant to NSC's damages theories.  FCA seeks an order compelling NSC to produce documents responsive to the full scope of the requests.

RFPs 61-62 seek NSC's communications with customers regarding its railcars or patented features, which bears on the value of the patented invention. Ex. 14 at 4.  RFP 63 seeks NSC's detailed profit and loss statements, which identify NSC's incremental expenses and profits.  *Id.* RFPs 65-68 seek NSC's forecasted and actual data for its production and sale of railcars, which relate to NSC's manufacturing capacity and incremental costs, as well as to any adjustment to NSC's forecast for the railcars NSC claims it would have sold but for FCA's accused sale.  *Id.* at 5. RFP 71 seeks NSC's assessments of its competitors, which relate to the value of  non-patented features of NSC's railcars as compared to the value of the patented invention.  *Id.* at 6.  RFP 73

---

[5]  NSC has also asked FCA to replace "Freight Car" with "Freight Car America."  But NSC's employees are very unlikely to use FCA's full name in emails.  Indeed, NSC even refers to FCA as "Freight Car" in briefs and other documents it files in this formal judicial proceeding. *See, e.g.*, D.I. 1 ¶ 1.

seeks documents reflecting NSC's belief that a non-party competitor may be infringing its patents, which relate to whether alternatives are noninfringing. *Id.* RFP 74 seeks warranty and service transaction data for NSC's jenny railcars, which identify expenses affecting NSC's profits. *Id.*

RFP No. 62. NSC limited its production to communications with customers relating to the patented jennies NSC produced in 2009. Ex. 16 at 1. However, customer communications relating to other NSC jennies are relevant to the value of the patented and unpatented features of the patent-practicing 2009 jennies. NSC should be compelled to produce documents responsive to the full scope of the request.

RFP No. 63. The profits and loss statements produced by NSC were heavily redacted, leaving only a small fraction of the information in the statements. Ex. 20. Given that the Court has entered a protective order, D.I. 41, there is no justification for NSC's decision to unilaterally decide what portions of these documents are relevant to the case. NSC should be compelled to produce unredacted versions of these documents.

RFP Nos. 66, 71. NSC limited its production to documents relating to jennies produced for the DMIR railroad. Ex. 16 at 2-3. However, financial assessments relating to other NSC jennies (RFP 66) and analyses of competitor jennies not intended for the DMIR (RFP 71) are relevant to at least the value of the patented and unpatented features of the patent-practicing 2009 jennies. NSC should be compelled to produce documents responsive to the full scope of the request.

Even more troubling, NSC has refused to state whether it narrowed the scope of its search or production based on its objections and, if it did, how it narrowed that scope. Because NSC's initial response to these RFPs were ambiguous on this point (Ex. 15 at 7-16), FCA asked NSC to explain how it had limited its search. *See* Ex. 18 at 2; *see also* Ex. 17 at 1-4. But even after two conferences of counsel and several letters, NSC has not answered the question with any clarity. Ex. 19 at 4-6 (responding to Ex. 18). NSC's intentionally ambiguous response violates Fed. R. Civ. P. 34(b), which requires that an "objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). NSC should be required to state whether and how it has limited its search for or production of documents responsive to RFPs 61-63, 66-68, 71, and 73-74.

NSC is the plaintiff in this case and is seeking money damages. It has no excuse for withholding documents relating to its damages theories. The Court should compel NSC to produce documents responsive to the full scope of the disputed requests.

Respectfully,

*/s/ John C. Phillips, Jr.*

John C. Phillips, Jr. (#110)

cc:     All counsel of record (by CM/ECF & email)

-3-

# EXHIBIT 1

**DEFAULT STANDARD FOR DISCOVERY,
INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION
("ESI")**

1. **General Provisions**

   a. **Cooperation.**  Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36.  In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement.

   b. **Proportionality.**  Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1]  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

   c. **Preservation of Discoverable Information.**  A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

   (i)  Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

(ii)  Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

d.  **Privilege.**

(i)  The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

(ii)  With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

(iii)  Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(iv)  Parties shall confer on an appropriate non-waiver order under Fed. R. Evid. 502.  Until a non-waiver order is entered, information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced or if notice is provided within 30 days of inadvertent production.

2.  **Initial Discovery Conference.**

a.  **Timing.**  Consistent with the guidelines that follow, the parties shall discuss the parameters of their anticipated discovery at the initial discovery conference (the "Initial Discovery Conference") pursuant to Fed. R. Civ. P. 26(f), which shall take place before the Fed. R. Civ. P. 16 scheduling conference ("Rule 16 Conference").

2

b. **Content.** The parties shall discuss the following:

(i) The issues, claims and defenses asserted in the case that define the scope of discovery.

(ii) The likely sources of potentially relevant information (i.e., the "discoverable information"), including witnesses, custodians and other data sources (e.g., paper files, email, databases, servers, etc.).

(iii) Technical information, including the exchange of production formats.

(iv) The existence and handling of privileged information.

(v) The categories of ESI that should be preserved.

3. **Initial Disclosures.** Within 30 days after the Rule 16 Conference, each party shall disclose:

a. **Custodians.** The 10 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

b. **Non-custodial data sources.**[2] A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

c. **Notice.** The parties shall identify any issues relating to:

(i) Any ESI (by type, date, custodian, electronic system or other criteria)

---

[2]That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

3

that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

(ii)  Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

(iii)  Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

### 4.  Initial Discovery in Patent Litigation.[3]

a.  Within 30 days after the Rule 16 Conference and for each defendant,[4] the plaintiff shall specifically identify the accused products[5] and the asserted patent(s) they allegedly infringe, and produce the file history for each asserted patent.

b.  Within 30 days after receipt of the above, each defendant shall produce to the plaintiff the core technical documents related to the accused product(s), including but not limited to operation manuals, product literature, schematics, and specifications.

c.  Within 30 days after receipt of the above, plaintiff shall produce to each defendant an initial claim chart relating each accused product to the asserted claims each product allegedly infringes.

------------

[3]As these disclosures are "initial," each party shall be permitted to supplement.

[4]For ease of reference, "defendant" is used to identify the alleged infringer and "plaintiff" to identify the patentee.

[5]For ease of reference, the word "product" encompasses accused methods and systems as well.

d. Within 30 days after receipt of the above, each defendant shall produce to the plaintiff its initial invalidity contentions for each asserted claim, as well as the related invalidating references (e.g., publications, manuals and patents).

e. Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

5. **Specific E-Discovery Issues.**

a. **On-site inspection of electronic media.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b. **Search methodology.** If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party. Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with the electronic search. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a).

c. **Format.** ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the

original formatting, the metadata (as noted below) and, where applicable, the revision history.  The parties shall produce their information in the following format:  single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

d. **Native files.**  The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files.

e. **Metadata fields.**  The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists:  Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic

equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

# EXHIBIT 2

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NATIONAL STEEL CAR LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-00594-JLH-CJB |
| | ) | |
| FREIGHTCAR AMERICA INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF NATIONAL STEEL CAR LIMITED'S OBJECTIONS AND
RESPONSES TO DEFENDANT FREIGHTCAR AMERICA, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-60)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.1 of the District of Delaware Local Civil Rules, Plaintiff, National Steel Car Limited ("NSC"), hereby responds and objects to Defendant FreightCar America Inc.'s ("FreightCar") first set of Requests for Production of Documents and Things served on December 19, 2024.

Discovery is ongoing in this case, and Plaintiff's objections will be based on, and therefore necessarily limited by, the records and information still in existence, presently recollected, and thus far discovered in the course of searching for responsive documents. Plaintiff is continuing its investigation and discovery and therefore reserves the right to produce any subsequently- discovered facts, documents, or information that may be responsive to these requests for production of documents. Plaintiff reserves the right to supplement these objections and to supplement its production(s) as necessary to comply with the requirements of Fed. R. Civ. P. 26(e).

All objections as to privilege, immunity, relevance, authenticity, or admissibility of any information or documents herein are expressly reserved.

None of the responses or objections to any Request herein are a direct or indirect admission (i) of the truth or accuracy of any statement or characterization asserted in any

Request or by the parties in any pleading or other filing with the Court; (ii) of the validity of any objection to any discovery Request propounded in this action; or (iii) that any discovery Request propounded in this action is wholly or partially objectionable under any applicable law or rules.

To the extent that Plaintiff responds to any one of the Requests by stating that Plaintiff will produce non-privileged documents or is searching for documents, Plaintiff does not represent that any documents actually exist or are within its possession, custody, or control, but rather that Plaintiff will make a good faith search and attempt to ascertain whether documents responsive to the Request exist. Plaintiff will produce existing, responsive, non-privileged documents where indicated in the specific objections and responses herein, in accordance with Federal Rule of Civil Procedure 34(b)(2)(B).

In the event of a discovery dispute, Plaintiff's counsel is prepared to meet with Defendant's counsel to discuss and, if possible, resolve any disputes that may arise concerning the meaning, scope, and relevance of the Requests or the adequacy of Plaintiff's objections and responses thereto.

## OBJECTIONS TO THE DEFINITIONS AND INSTRUCTIONS

Plaintiff objects to the Definitions and Instructions to the extent that they seek to impose obligations greater than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and any other applicable laws or rulings of this Court.

1.      Plaintiff objects to the definition of the terms "National Steel Car," "NSC," "you," and "your" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure, at least to the extent that it includes "all" "past and present predecessors, successors, subsidiaries, affiliates, and parent companies," and "all"

2

"past and present directors, officers, partners, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities."

2.      Plaintiff objects to the definition of the term "instrumentality" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure, at least to the extent that it purports to reach an ultimate legal conclusion.

3.      Plaintiff objects to the definition of the term "Patented Instrumentality" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure, at least to the extent that it purports to reach an ultimate legal conclusion.

4.      Plaintiff objects to the definition of the term "Related" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least to the extent that it purports to reach an ultimate legal conclusion and at least because the phrase "the two patent documents overlap in disclosed or claimed subject matter and overlap in inventors, applicants, or assignees" is vague and ambiguous.

5.      Plaintiff objects to the definition of the term "person" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least because the phrase "the acts of a non-natural person shall include acts taken on its behalf by its directors, officers, members, employees, representative, agents, or attorneys" is vague and ambiguous and requires legal conclusions.

6.      Plaintiff objects to the definition of the term "document" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least because it includes "all copies, and any non-identical copies; includes written, printed, typed, and visually or aurally reproduced material of any kind; and includes electronically stored information of any sort."

7.      Plaintiff objects to the definition of the terms "device," "thing," and "item" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least because it includes "all tangible objects of any type, composition, construction, or nature."

8.      Plaintiff objects to the definition of the term "communication" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least because it includes "all communications of any sort between persons and entities, such as (but not limited to) written, electronic, oral, telephonic, and nonverbal communications, as well as all documents evidencing a communication."

9.      Plaintiff objects to the instruction regarding producing items for inspection at least to the extent that it imposes a burden beyond that required by the Federal Rules of Civil Procedure, any Order entered in this matter, or the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information.

10.      Plaintiff objects to the instruction regarding privilege logs at least to the extent that it imposes a burden beyond that required by the Federal Rules of Civil Procedure, any Order entered in this matter, or the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information.

11.      Plaintiff objects to each Request to the extent that it seeks to impose obligations greater than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and any other applicable laws or rulings of this Court. Plaintiff will produce relevant, nonprivileged documents responsive to Defendant's Requests for Production consistent with its obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and upon entry of a suitable protective order. Plaintiff will

4

continue to search for non- privileged documents responsive to Defendant's Requests for Production. Plaintiff will produce any such documents that it locates which are in its possession, custody or control on a rolling basis. Plaintiff does not guarantee, however, that a diligent search of the documents in its possession, custody or control will result in the identification of all relevant, non-privileged documents for each of Defendant's Requests for Production, nor does any indication herein that Plaintiff will produce documents constitute any admission that such documents exist. Plaintiff understands that Defendant is not seeking documents consisting of, or reflecting, attorney-client communication or information protected by the work-product doctrine. To the extent that a Request seeks such documents, Plaintiff objects accordingly. Plaintiff objects to any Request to the extent it seeks information that is already in Defendant's possession, custody, or control. Plaintiff objects to any Request as premature to the extent it requests Plaintiff search for, identify, or produce ESI. Plaintiff will produce non-privileged, responsive ESI in accordance with the deadlines set forth in any Order of the Court governing such production.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** All documents, communications, and things you identified in response to an interrogatory served in this action or that you reviewed or relied upon in responding to such an interrogatory.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks "all" "documents, communications, and things."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 2:** All documents, communications, and things that support or rebut any allegation, defense, or prayer for relief contained in any pleading that you filed or will file in this action, including your allegations that FreightCar America has infringed the Asserted Patents; that FreightCar America infringed willfully; that you are entitled to damages, pre-judgment and post-judgment interest on the damages award, or injunction relief; and that this is an exceptional case under 35 U.S.C. § 285 and warrants treble damages.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks "all" "documents, communications, and things." Plaintiff objects to this Request to the extent it uses the term "any pleading that you . . . will file in this action."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 3:** All documents, communications, and things referring or relating to the Asserted Patents.

**RESPONSE (JANUARY 30, 2025):**
Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks "all" "documents, communications, and things." Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 4:** All documents, communications, and things referring to FreightCar America or a FreightCar America railcar.

**RESPONSE (JANUARY 30, 2025):**

7

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks "all" "documents, communications, and things." Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 5:** Documents, communications, and things referring or relating to any prior art concerning the Asserted Patents.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 6:** Documents, communications, and things referring or relating to any search results, including patentability, validity, prior-art, infringement, or state-of-the-art searches, concerning the Asserted Patents or any applications to which the Asserted Patents claim priority.

**RESPONSE TO REQUEST NO. 6 (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 7:** Agreements between you and the inventors listed on the Asserted Patents, including employment agreements, assignments, acknowledgements, and severance agreements.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

9

**REQUEST NO. 8:**  Documents, communications, and things referring or relating to the conception, reduction to practice, development, analysis, or testing of any kind of the subject matter disclosed or claimed in the Asserted Patents, including all invention disclosures, inventor notebooks, workbook entries, calendars, memoranda, files and notes, prototypes, and reports, and documents sufficient to identify all individuals involved in such conception, reduction to practice, development, analysis, or testing.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks "all invention disclosures . . ." and "all individuals." Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 9:**  Documents and things that any inventor who is listed on one or more of the Asserted Patents, or their representative or any person they collaborated with, acting at the direction or under the control of an inventor, considered in connection with the development of any invention disclosed or claimed in the Asserted Patents.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

10

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "or their representative or any person they collaborated with, acting at the direction or under the control of an inventor."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 10:**  Documents and things referring or relating to any obstacles to arriving at the alleged inventions recited in any claim of an Asserted Patent or how each such obstacle was overcome.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the terms "referring to or relating" and "obstacle."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 11:**  Documents and things referring or relating to any diligence by any inventor of an Asserted Patent between conceiving an alleged invention recited in an Asserted Patent and reducing it to practice.

11

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring to or relating."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 12:** An inspection of a representative sample of each model and version of each Patented Instrumentality and each NSC Jenny.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent that it seeks an inspection of samples not in Plaintiff's possession, custody, or control, or samples that are already in Defendant's possession, custody, or control.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks "a representative sample of each model and version of each Patented Instrumentality and each NSC Jenny." Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "model and version."

12

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, counsel for Plaintiff will confer with counsel for Defendant to determine an appropriate time, location, and protocol for the inspection of a representative sample of each model or version of Patented Instrumentality.

**REQUEST NO. 13:** Documents referring or relating to the 2009 NSC-CN Bid or the 2018-2024 NSC-CN Bid.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST NO. 14:** NSC's communications with CN referring or relating to the 2009 NSC-CN Bid, the 2018-2024 NSC-CN Bid, any railcar on the DMIR or provided for use on the DMIR, or FreightCar America.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

13

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "communications with CN referring or relating to . . . FreightCar America" and "any railcar on the DMIR or provided for use on the DMIR."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents that reflect communications with CN concerning the 2009 NSC-CN Bid, the 2018-2024 NSC-CN Bid, or any open top with bottom discharge rail car on or provided for use on the DMIR, to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 15:** All documents exchanged between NSC and CN relating to the 2009 NSC-CN Bid or the 2018-2024 NSC-CN Bid.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent that it seeks documents not in Plaintiff's possession, custody, or control, or documents that are already in Defendant's possession, custody, or control.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "all" documents.

14

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 16:** All documents exchanged between NSC and CN since NSC and CN's first contact regarding the 2009 NSC-CN Bid.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent that it seeks documents not in Plaintiff's possession, custody, or control, or documents that are already in Defendant's possession, custody, or control.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "all documents exchanged between NSC and CN since NSC and CN's first contact regarding the 2009 NSC-CN Bid."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will not search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION 17:** All documents exchanged between NSC and CN after March 13, 2012.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the

15

extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent that it seeks documents not in Plaintiff's possession, custody, or control, or documents that are already in Defendant's possession, custody, or control.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "All documents exchanged between NSC and CN after March 13, 2012."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will not search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION 18:** Documents sufficient to identify each person at NSC involved in developing or pitching the 2009 NSC-CN Bid or the 2018-2024 NSC-CN Bid.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the terms "developing or pitching."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

16

**REQUEST FOR PRODUCTION 19:** Documents referring or relating any meeting NSC held with CN since the beginning of the 2009 NSC-CN Bid.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent that it seeks documents not in Plaintiff's possession, custody, or control, or documents that are already in Defendant's possession, custody, or control.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "any meeting NSC has held with CN since the beginning of the 2009 NSC-CN Bid."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will not search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION 20:** Documents referring or relating to or comprising any feedback or explanation provided by CN regarding its decision to award or not to award NSC a contract for the manufacture of any Jenny, including in connection with the 2009 NSC-CN Bid or the 2018-2024 NSC-CN Bid.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent that it seeks documents not in Plaintiff's possession, custody, or control, or documents that are already in Defendant's possession, custody, or control.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks documents regarding "any Jenny."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 21:** Documents referring or relating to or comprising the "quote to CN . . . for approximately 840 jennies" that NSC alleges it provided "by September 2019" (D.I. 19 ¶ 21).

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent that it seeks documents not in Plaintiff's possession, custody, or control, or documents that are already in Defendant's possession, custody, or control.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly

18

burdensome to the extent it is unbounded in time and seeks documents regarding "any Jenny."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 22** Documents referring or relating to or comprising any presentation NSC gave to CN in connection with the 2009 NSC-CN Bid or the 2018-2024 NSC-CN Bid, or that refers to any Jenny, including the "presentation to CN regarding NSC as a company, its manufacturing processes, and history of working with CN" that NSC alleges it gave to CN in January 2020 (D.I. 19 ¶ 22), including the presentation containing the slide shown in paragraph 24 of NSC's First Amended Complaint (D.I. 19 ¶ 24).

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent that it seeks documents not in Plaintiff's possession, custody, or control, or documents that are already in Defendant's possession, custody, or control.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks documents regarding "any Jenny."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents

19

responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 23:** NSC's communications with CN "[f]rom around August 2021 until around January 2023," including those referenced in paragraph 27 of NSC's First Amended Complaint (D.I. 19 ¶ 27).

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent that it seeks documents not in Plaintiff's possession, custody, or control, or documents that are already in Defendant's possession, custody, or control.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "NSC's communications with CN '[f]rom around August 2021 until around January 2023.'"

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents reflecting NSC's communications with CN referenced in paragraph 27 of NSC's First Amended Complaint (D.I. 19 ¶ 27.) to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 24:** Documents referring or relating to or comprising any communications between NSC and CN that mention FreightCar America or another railcar manufacturer.

20

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the terms "referring or relating to" and "another railcar manufacturer." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "any communications between NSC and CN that mention FreightCar America or another railcar manufacturer."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will not search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION 25:** Documents and communications referring or relating to any analysis or inspection by NSC of a FreightCar America railcar, including NSC's inspection "on July 23, 2024 at CN's railyard in Proctor, Minnesota" (D.I. 19 ¶ 34), including all photographs, notes, and other documents related to that inspection.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "any analysis or inspection by NSC of a FreightCar America railcar."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents reflecting NSC's inspection "on July 23, 2024 at CN's railyard in Proctor, Minnesota" (D.I. 19 ¶ 34), including all photographs, notes, and other documents related to that inspection to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 26:** Documents and things concerning the research, design, and development of any Patented Instrumentality, NSC Jenny, or any component thereof, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "documents and things concerning the research, design, and development of any . . . NSC Jenny, or any component thereof."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents reflecting the research, design, and development of any Patented Instrumentality to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 27**: Documents, communications, and things, including publications and articles, referring or relating to any testing or research relating to the 2009 NSC Jennies, the 2024 NSC Jennies, or other NSC Jennies.

22

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks documents concerning the "2009 NSC Jennies, the 2024 NSC Jennies, or other NSC Jennies."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will not search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION 28:** Documents, communications, and things referring or relating to or comprising contemplated or actual submissions to any governmental, standard-setting, or trade organization, including U.S. Department of Transportation, Federal Railroad Administration, and Association of American Railroads, concerning the 2009 NSC Jennies, the 2024 NSC Jennies, or other NSC Jennies.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks documents concerning the "2009 NSC Jennies, the 2024 NSC Jennies, or other NSC Jennies."

23

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will not search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION 29:** Communications with any governmental, standard-setting, or trade organization, including U.S. Department of Transportation, Federal Railroad Administration, and Association of American Railroads, concerning the 2009 NSC Jennies, the 2024 NSC Jennies, or other NSC Jennies.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks documents concerning the "2009 NSC Jennies, the 2024 NSC Jennies, or other NSC Jennies."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will not search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION 30:** Documents referring or relating to development of any model or version of a Patented Instrumentality or NSC Jenny, including documents referring or relating to or identifying: the beginning or end dates for the development; the individuals involved in the development, the nature of their involvement, or their contributions; a location of the development; design constraints, specifications, requirements, preferences, or parameters, including any from CN, the Federal Railroad Administration, or the American Association of Railroads; or any prior railcar design considered, referenced, or otherwise used in the development.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the

24

extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks documents concerning "any model or version of a . . . NSC Jenny." Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents reflecting the development of any model or version of a Patented Instrumentality to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 31:** Documents discussing or referring to any feature of the 2009 NSC Jennies that you contend is an improvement over prior railcar designs.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "discussing or referring to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

25

**REQUEST FOR PRODUCTION 32:** Documents and things that support your contention that "[t]he '892 and '515 Patents claim novel features of NSC's design of the rail cars provided for use by DMIR in 2009" (D.I. 19 ¶ 88).

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 33:** Documents and things that support your contention that "[u]nique requirements of docks on which the [2009 NSC Jennies] would be used by DMIR in Two Harbors, Minnesota led NSC to innovate a number of novel features for the rail cars designed and provided in or around 2009" (D.I. 19 ¶ 13).

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 34:** Documents sufficient to identify each of the allegedly "[u]nique requirements of docks on which the [2009 NSC Jennies] would be used by DMIR in Two Harbors, Minnesota" and each allegedly "novel feature[]" for the 2009 NSC Jennies referenced in paragraph 13 of NSC's First Amended Complaint (D.I. 19 ¶ 13).

26

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 35:** Documents referring or relating to the advantages, benefits, or useful features, if any, of the 2009 NSC Jennies or the 2024 NSC Jennies.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 36:** Documents referring or relating to any co-development between you and any third party of the 2009 NSC Jennies or the 2024 NSC Jennies.

27

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks "any co-development between you and any third party of the 2009 NSC Jennies or the 2024 NSC Jennies" that does not concern the Asserted Patents.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents reflecting any co-development between Plaintiff and any third-party of the 2009 NSC Jennies or the 2024 NSC Jennies related to the Asserted Patents, to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 37:** Documents sufficient to show your distribution channels for the 2009 NSC Jennies and the 2024 NSC Jennies, or any parts thereof, and the recipients of such railcars or parts.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents

28

responsive to this Request to the extent such documents exist, are in Plaintiff's possession,

custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 38:** Documents showing or discussing the design or operation of any Patented Instrumentality, including technical drawings, design history files, manuals and instructions.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and

instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the

extent it seeks information protected by the attorney-client privilege, work product doctrine,

common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and to the extent that

Plaintiff understands this Request, Plaintiff will produce non-privileged documents

responsive to this Request to the extent such documents exist, are in Plaintiff's possession,

custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 39:** Documents sufficient to show the design and operation of each NSC Jenny.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and

instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the

extent it seeks information protected by the attorney-client privilege, work product doctrine,

common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent

it is unbounded in time and seeks "documents sufficient to show the design and operation of

each NSC Jenny" insofar as such design and operation does not concern the Asserted Patents.

Subject to and without waiving the foregoing objections, and to the extent that

Plaintiff understands this Request, Plaintiff will produce non-privileged documents sufficient

29

to show the design and operation of each NSC Jenny insofar as it relates to the Asserted

Patents, to the extent such documents exist, are in Plaintiff's possession, custody or control,

and are located following a reasonable search.

**REQUEST FOR PRODUCTION 40:** For each model and version of each Patented
Instrumentality and NSC Jenny, a full working CAD model, a bill of materials, and
documents sufficient to correlate the parts listed in the bill of materials with the technical
drawings for those parts.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and

instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the

extent it seeks information protected by the attorney-client privilege, work product doctrine,

common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent

it is unbounded in time and seeks documents "for each model and version of each Patented

Instrumentality" and to the extent it seeks documents "for each model and version of each . . .

NSC Jenny."

Subject to and without waiving the foregoing objections, and to the extent that

Plaintiff understands this Request, Plaintiff will produce non-privileged documents including

"a full working CAD model, a bill of materials, and documents sufficient to correlate the

parts listed in the bill of materials with the technical drawings for those parts" for each

Patented Instrumentality, to the extent such documents exist, are in Plaintiff's possession,

custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 41:** For each model and version of each Patented
Instrumentality, documents relating to any engineering analysis of the instrumentality,
including any stress analysis or other analysis regarding load-bearing capabilities of a
structure or component in the instrumentality.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks documents "for each model and version of each Patented Instrumentality."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 42:** For the 2009 NSC Jennies and any railcar you contend practices any claim of an Asserted Patent, documents sufficient to identify, on a monthly or quarterly basis, (1) sales volume in units and revenue by product, customer, and date, (2) gross, operating, and net profit, (3) each cost and expense, including but not limited to direct and indirect labor and material costs, shipping costs, warehousing costs, manufacturing overhead costs, commissions, sales and marketing expenses, general and administrative expenses, and research and development expenses, associated with the manufacture, production, distribution, and sale of the railcar.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent it seeks expert discovery.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents

31

responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 43:** Documents sufficient to identify the projected or expected financial performance of the 2024 NSC Jennies, including projected values for (1) sales volume in units and revenue by product, customer, and date, (2) gross, operating, and net profit, (3) each cost and expense, including but not limited to direct and indirect labor and material costs, shipping costs, warehousing costs, manufacturing overhead costs, commissions, sales and marketing expenses, general and administrative expenses, and research and development expenses, associated with the manufacture, production, distribution, and sale of the railcar.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent it seeks expert discovery.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 44:** Business plans relating to NSC Jennies, including operation plans, marketing plans, and advertising or promotion plans.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

32

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 45:** Documents referring or relating to any quality issue with the 2009 NSC Jennies, the 2024 NSC Jennies, or any CN Jenny used on the DMIR.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 46:** Documents referring or relating to or comprising any customer complaints regarding the 2009 NSC Jennies.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

33

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 47:** Documents, communications, and things sufficient to identify the date(s) on which the subject matter disclosed and claimed in the Asserted Patents was first offered for sale, first sold, first used in public, first disclosed to someone other than the inventors listed on each Asserted Patent, or first published.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 48:** Marketing materials concerning any Patented Instrumentality or NSC Jenny, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the

34

extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks documents for "any . . . NSC Jenny."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 49:** Publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any Patented Instrumentality or NSC Jenny, including without limitation those authored by an inventor of an Asserted Patent or a designer of a Patented Instrumentality.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent it is unbounded in time and seeks documents for "any . . . NSC Jenny."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 50:** Documents, communications, and things referring or relating to the decision to prepare, file, and prosecute the Asserted Patents or any applications to which the Asserted Patents claim priority.

35

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 51:** All documents assigning any rights in or to an Asserted Patent.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 52:** All documents cited in a document assigning any rights in or to an Asserted Patent, including the General Security Agreement dated April 19, 2005, and the Amended and Restated Credit Agreement dated December 21, 2006, each referenced in a document titled "Confirmation of Security Interest In United States Patents

36

and Patent Applications" involving NSC and The Bank of Nova Scotia, dated January 7, 2010, and available at U.S. Patent Office Reel 023750 and Frame 0572; the Assignment Agreement dated June 8, 2012, the General Security Agreement dated April 19, 2005, the Confirmation of Security Interest dated December 21, 2006, and the General Confirmation of Security Interest in Intellectual Property dated January 7, 2010, each referenced in a document titled "Acknowledgement and Confirmation (Assignment of Security)" involving The Bank of Nova Scotia, Export Development Canada, and NSCL Trust, dated September 13, 2012, and available at U.S. Patent Office Reel 029136 and Frame 0917; and the security agreement dated February 10, 2017, referenced in a document titled "Notice of Security Interest in US Intellectual Property" involving NSC and Greypoint Capital Inc., dated February 10, 2017, and available at U.S. Patent Office Reel 041365 and Frame 0241.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad, vague, ambiguous, and unduly burdensome to the extent that it seeks "[a]ll Documents."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 53:** Documents referring or relating to or comprising license agreements, settlement agreements, patent purchase agreements, covenants not to sue, stand-down agreements, negotiations, and settlement offers concerning any Asserted Patent, any Related Patent, or any technology or other intellectual property related to railcars.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to or comprising." Plaintiff objects to this Request as overly broad, vague, ambiguous, and unduly burdensome to the extent that it seeks "agreements, negotiations, and settlement offers" concerning "any technology or other intellectual property related to rail cars."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 54:** All documents, communications, and things referring or relating to any opinion, report, or analysis concerning the invalidity or validity, infringement or non-infringement, enforceability or unenforceability, or patentability or unpatentability of any Asserted Patent.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent it seeks expert discovery. Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent that it seeks "[a]ll documents, communications, and things."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

38

**REQUEST FOR PRODUCTION 55:** All documents, communications, and things referring or relating to any comparison between an NSC railcar and a FreightCar America railcar.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request to the extent it seeks expert discovery.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent that it seeks "[a]ll documents, communications, and things."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will not search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION 56:** All documents, communications, and things referring or relating to the marking of, or decision whether to mark, the patent number of an Asserted Patent on any product, on any product packaging, or anywhere else.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent that it seeks "[a]ll documents, communications, and things."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents

39

responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 57:** Documents sufficient to identify all license agreements, settlement agreements, patent purchase agreements, covenants not to sue, stand-down agreements, negotiations, and settlement offers conferring any rights to an Asserted Patent and, for each, all parties thereto, the date, and the rights conferred.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents responsive to this Request to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 58:** Documents sufficient to identify each railcar model NSC has made, offered for sale, or sold within the United States, or imported into the United States, since March 13, 2012.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent that it seeks "to identify each railcar model NSC has made, offered for sale, or sold within the United States, or imported into the United States, since March 13, 2012."

40

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will not search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION 59:** All documents referring or relating to repair or maintenance of any Patented Instrumentality, 2009 NSC Jenny, or 2024 NSC Jenny since March 13, 2012, including the repair or maintenance performed, the reasons for the repair or maintenance, the persons or entities that participated in the repair or maintenance, and all dates and locations of the repair or maintenance.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent that it seeks "[a]ll documents." Plaintiff objects to this Request as vague and ambiguous to the extent it uses the term "referring or relating to." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent that it seeks documents concerning the repair or maintenance of any "2009 NSC Jenny, or 2024 NSC Jenny since March 13, 2012."

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents concerning the repair or maintenance of any Patented Instrumentality since March 13, 2012 to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

**REQUEST FOR PRODUCTION 60:** Documents sufficient to identify the following for each Jenny railcar NSC has made, offered for sale, or sold within the United States, or imported into the United States, since March 13, 2012; each Patented Instrumentality; each 2009 NSC Jenny railcar; and each 2024 NSC Jenny railcar:

Date of contract for the build;

Road mark and number (e.g., DMIR 70016);

Ship-from location;

Ship-to location;

FOB location;

Date of invoice;

Date of order;

Date shipped;

Date crossed the border;

Date FOB; and

Date arrived at destination.

**RESPONSE (JANUARY 30, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overly broad and unduly burdensome to the extent that it seeks documents "for each Jenny railcar NSC has made, offered for sale, or sold within the United States, or imported into the United States, since March 13, 2012. . . . each 2009 NSC Jenny railcar; and each 2024 NSC Jenny railcar." Plaintiff objects to this Request as overly broad and unduly burdensome to the extent that it seeks documents for "each Patented Instrumentality" unbounded in time and without a requirement that such Patented Instrumentality was made, offered for sale, or sold within the United States, or imported into the United States.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff will produce non-privileged documents concerning the requested information for each Patented Instrumentality made, offered for

42

sale, or sold within the United States, or imported into the United States, since March 13, 2012 to the extent such documents exist, are in Plaintiff's possession, custody or control, and are located following a reasonable search.

Dated: January 30, 2025

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

/s/ Robert D. Keeler

Safet Metjahic (*pro hac vice*)
Robert D. Keeler (*pro hac vice*)
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036
(212) 824-4940

Kenneth Sheehan (*pro hac vice*)
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 807-4055
*Attorneys for Plaintiff National Steel Car Limited*

43

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2025, a true and correct copy of the within

document was served on the following counsel of record at the addresses in the manner

indicated:

**VIA EMAIL**:

Brian C. Horne (*Pro Hac Vice*)
KNOBBE, MARTENS, OLSON &
BEAR, LLP
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 601-1263
Brian.Horne@knobbe.com

Sean M. Murray (*Pro Hac Vice*)
Justin J. Gillett (*Pro Hac Vice*)
KNOBBE, MARTENS, OLSON &
BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Sean.Murray@knobbe.com
Justin.Gillett@knobbe.com

John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE 19806-4204
Telephone: (302) 655-4200
Facsimile: (302) 655-4210
jcp@pmhdelaw.com
dab@pmhdelaw.com

Dated: January 30, 2025          */s/ Robert D. Keeler*
                                    Robert D. Keeler

44

# EXHIBIT 3

| From: | Justin Gillett |
|---|---|
| To: | Robert.Keeler@icemiller.com; Sean Murray; Brian Horne |
| Cc: | Lit FCAL.001L; JCP@PMHDELaw.com; Andrew Russell; John Shaw; IM-NSClit@icemiller.com; Safet Metjahic@icemiller.com; Ken Sheehan@icemiller.com; Kevin Adams@icemiller.com; SKNationalSteelCar; dab@pmhdelaw.com |
| Subject: | RE: National Steel Car v. FreightCar America Inc. - Email Search Terms |
| Date: | Monday, July 7, 2025 9:22:28 AM |
| Attachments: | image001.png 2025-07-07 Letter to NSC re NSC"s Search Terms.pdf |

Counsel,

Pursuant to paragraph 5.b. of the Delaware Default Standard for Discovery, Including Discovery of ESI, FreightCar America requests that NSC use the following additional terms in connection with NSC's search for potentially responsive ESI. Please apply these terms to all subject non-email ESI. Please apply terms 1, 3-4, and 6-9 to all subject email ESI dating back to at least May 17, 2018. Please apply term 5 to all subject email ESI in the date ranges 1/1/2007 to 9/11/2009 and 1/1/2018 to 12/31/2023, which are tailored to the date ranges of NSC's bids for the 2009 and 2024 Jennies. Please apply term 5 to all subject email ESI without temporal limitation, pursuant to paragraph 4.e. of the Delaware Default Standard for Discovery, Including Discovery of ESI.

1. "Freight Car" OR FreightCar* OR FCA*
2. "Canadian National" OR CN* OR *@cn.ca

   Date ranges: 1/1/2007 to 9/11/2009 (i.e., the earliest relevant date provided in NSC's response to Rog 12 regarding NSC's bids for the 2009 and 2024 Jennies until the filing date of earliest patent application in priority chain); 1/1/2018 to 12/31/2023 (i.e., the earliest and latest relevant dates provided in NSC's response to Rog 12)

3. ARI* OR Greenbrier* OR GBR* OR Trinity*
4. f((Department OR Dept*) W/2 Transp*) OR "DOT" OR "D.O.T." OR (Fed* W/2 Railroad) OR FRA OR "F.R.A."
5. cyclopedia* OR "car builders' dictionary" OR "car builder's dictionary" OR "car builders dictionary" OR (Hart AND patent) OR "992,192" OR 992192 OR (Lindstrom AND patent) OR (Lindström AND patent) OR "1,321,928" OR 1321928

   Date range: No temporal limitation, pursuant to paragraph 4.e. of the Delaware Default Standard for Discovery

6. "machinery space" AND (structure* OR support* OR "elephant ear" OR reinforce* OR free OR open)
7. "web continuity" OR ("side wall" AND (support* OR stiffen* OR reinforce*) AND (vertical* OR align*))
8. (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (market* or improve* OR advance* OR advantage* OR opportunit* OR compet* OR "selling point" OR requirement* OR goal* OR objective* OR share*)
9. (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (presentation* OR powerpoint* OR slides OR memo* OR projection* OR estimat* OR licens*)

These search terms are formatted for a Relativity dt search, with stemming enabled. If NSC proposes using a different search platform or a different search type, then please let us know. A Relativity

searching guide is available at https://help.relativity.com/PDFDownloads/R1_PDF/RelativityOne%20-%20Searching%20Guide.pdf.

Please let us know when NSC intends to disclose the additional search terms it requests to be used in connection with the electronic search of FreightCar America's documents.

Please find attached correspondence regarding the search terms NSC disclosed for locating its ESI.

Best regards,
Justin

---

**From:** Justin Gillett <Justin.Gillett@knobbe.com>
**Sent:** Friday, April 18, 2025 4:12 PM
**To:** Robert.Keeler@icemiller.com; Sean Murray <Sean.Murray@knobbe.com>; Brian Horne <Brian.Horne@knobbe.com>
**Cc:** Lit FCAL.001L <LitFCAL.001L@knobbe.com>; JCP@PMHDELaw.com; Andrew Russell <arussell@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; IM-NSClit@icemiller.com; Safet.Metjahic@icemiller.com; Ken.Sheehan@icemiller.com; Kevin.Adams@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; dab@pmhdelaw.com
**Subject:** RE: National Steel Car v. FreightCar America Inc. - Email Search Terms

Counsel,

FreightCar America intends to use the following search terms to locate potentially responsive ESI.

1. (550043 OR DMIR8~) AND (projection~ OR forecast~ OR (market share) OR (marketing acceptance) OR (business plan) OR (budget) OR (financial W/2 plan) OR pricing OR (fiscal plan) OR ((marketing OR sale~ OR advertising) W/2 (strategy OR plan)))
2. (550043 OR DMIR8~) AND (CN OR (Canadian National) OR brochure~ OR pamphlet~ OR RFP or (request for proposal))
3. (550043 OR DMIR8~) AND (license OR (settlement agreement) OR (covenant W/5 sue))
4. (550043 OR DMIR8~) AND ((alternative design) OR (design-around) OR (design around))
5. (550043 OR DMIR8~) AND (sale~ AND benefit~)
6. ("8166892") OR ("8,166,892") OR ("8132515") OR ("8,132,515")
7. (550043 OR DMIR8~) AND (market OR competitor~ OR patent~)
8. competitor~ AND (((open-top hopper) AND (bottom discharge)) OR jenny~ OR jennies)
9. (550043 OR DMIR8~) AND (design change)
10. (550043 OR DMIR8~) AND (repair~ OR maintenance)

NSC asked FreightCar America to supplement its disclosure under ¶ 3(b) of the Default Standard to be more specific.  FreightCar America will do so.

NSC's disclosure under ¶ 3(b) of the Default Standard identifies Internal Network Servers and then parenthetically notes "at least" J:\, K:\, N:\, and V:\ drives.  Please identify all yet-unspecified portions of NSC's Internal Network Servers that are included in NSC's disclosure under ¶ 3(b).

FreightCar America is analyzing NSC's search terms.  Please explain NSC's basis for limiting the application of NSC's search terms to the dates specified in NSC's email appearing below.

Best regards,
Justin

**Justin Gillett**
Partner
Justin.Gillett@knobbe.com
949-721-6322 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/justin-gillett

**From:** Robert.Keeler@icemiller.com <Robert.Keeler@icemiller.com>
**Sent:** Thursday, March 20, 2025 5:19 PM
**To:** Justin Gillett <Justin.Gillett@knobbe.com>; Sean Murray <Sean.Murray@knobbe.com>; Brian Horne <Brian.Horne@knobbe.com>
**Cc:** Lit FCAL.001L <LitFCAL.001L@knobbe.com>; JCP@PMHDELaw.com; Andrew Russell <arussell@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; IM-NSClit@icemiller.com; Safet.Metjahic@icemiller.com; Ken.Sheehan@icemiller.com; Kevin.Adams@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; dab@pmhdelaw.com
**Subject:** National Steel Car v. FreightCar America Inc. - Email Search Terms

Counsel,

NSC will use the following search terms to search for responsive emails from previously-identified custodians Christian Olivera, David Keats, Hugh Nicholson, Jim Forbes, Ken Black, Leigh Scott, Marcus Thiesen, Maryam Agahi, Oliver Veit, and Vince De Luca:

1. "P6030-08" OR "P603008"
2. RFQ AND (070106 OR 0701006)
3. RFQ AND (080104 OR 0801004)
4. D1850 OR "D-1850" OR "D_1850"
5. D1816 OR "D-1816" OR "D_1816"
6. "CN ORE"~5
7. DMIR
8. RFQ AND (210103 OR 2101003)
9. RFQ AND (100102 OR 110106 OR 120107 OR 140103 OR 180113 OR 190101 OR 190102 OR 1001002 OR 1101006 OR 1201007 OR 1401003 OR 1801103 OR 1901001 OR 1901002)
10. "Miner Mechanism"~3
11. "8166892" OR "8,166,892" OR "12/780,741" OR "2011/0041724" OR "20110041724" OR "8132515" OR "8,132,515" OR "12/816,660" OR "12816660" OR "2010/0251922" OR "20100251922" OR "2678447" OR "2678605"

All but search term No. 10 was applied on all emails on or before 2024/05/17. Search term No. 10 ("Miner Mechanism"~3) was applied on all emails before 2010/01/01.

We look forward to receiving FreightCar's search terms.

Regards,
Rob

**Robert Keeler** | Associate



**P** 212-824-4961

1500 Broadway Suite 2900 New York, NY 10036

Robert.Keeler@icemiller.com | **icemiller.com**

*************************************************************************************************

***************************************************

CONFIDENTIALITY NOTICE: This E-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this E-mail or any attachment is prohibited. If you have received this E-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system.
Thank you.
ICE MILLER LLP
*************************************************************************************************

***************************************************

# EXHIBIT 4

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Justin Gillett
Justin.Gillett@knobbe.com

July 29, 2025

**VIA EMAIL**

Safet Metjahic
Robert D. Keeler
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036

Kenneth Sheehan
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001

Re:  *National Steel Car Limited v. FreightCar America, Inc.*, No. 1:24-cv-00594-JLB-CJB (D. Del.)

Counsel:

We write again regarding search terms for locating NSC's ESI, following FreightCar America's letter July 7, 2025, and the parties' conference of counsel on July 10, 2025.

Based on the parties' conference of counsel on July 10, FreightCar America understands that NSC is using the search platform Everlaw and is applying a search type that is an analog of Relativity's dtSearch.  NSC stated that certain terms – specifically, NSC's Terms 6 and 10 – contained proximity operators.  For example, NSC confirmed that "CN ORE"~5 would return documents containing the term "CN" within five words of the term "ore." However, NSC stated it could not recall all of the optional search functionalities it employed with its proposed terms (e.g., whether stemming was enabled).  NSC stated it would get back to FreightCar America with that information.  Please do so by August 5.

### Search Terms Proposed by NSC

During the parties' conference, NSC stated it would get back to FreightCar America regarding the following information.  Please do so by August 5.

- NSC Term 1.  Whether NSC will modify this search term to include alternative formatting for the subject order number for the 2009 NSC Jennies, including P-6030/08 and P6030/08.
- NSC Terms 2-3 & 8-9.  Whether NSC will modify these search terms to remove "RFQ."
- NSC Term 11.  Whether NSC will modify this search term to add missing numbers for the '892 patent application (12/559,065), the '892 patent attorney docket (200405.00128), the '515 patent attorney docket (200405.00139), the asserted patents' title ("gondola car"), and shorthand references to the asserted patents and their applications (patent AND ('892 OR 892 OR '515 OR 515 OR '065 OR 065 OR '660 OR 660)).

NSC Term 10.  During the parties' conference, NSC stated the temporal limitation on this term (i.e., before January 1, 2010) is targeted at NSC cars built with the Miner door mechanism.  NSC stated it believed NSC delivered all those cars before 2010 and stated it would investigate and tell FreightCar America whether that stated belief is correct.  Please do so by August 5.

Missing NSC Search Terms.  During the July 10 conference, NSC stated it has elected to use search terms for all FreightCar America RFPs.  But NSC's search terms are limited to identifiers for NSC Jennies (terms 1-10) and

# Knobbe Martens

numbers for the asserted patents and some related applications (term 11).  NSC's search terms do not address many FreightCar America RFPs, including the following.

- <u>RFP 4.</u>  All documents, communications, and things referring to FreightCar America or a FreightCar America railcar.
- <u>RFP 7.</u>  Agreements between you and the inventors listed on the Asserted Patents, including employment agreements, assignments, acknowledgements, and severance agreements.
- <u>RFP 23.</u>  NSC's communications with CN "[f]rom around August 2021 until around January 2023," including those referenced in paragraph 27 of NSC's First Amended Complaint (D.I. 19 ¶ 27).
- <u>RFP 24.</u>  Documents referring or relating to or comprising any communications between NSC and CN that mention FreightCar America or another railcar manufacturer.
- <u>RFP 25.</u>  Documents and communications referring or relating to any analysis or inspection by NSC of a FreightCar America railcar, including NSC's inspection "on July 23, 2024 at CN's railyard in Proctor, Minnesota" (D.I. 19 ¶ 34), including all photographs, notes, and other documents related to that inspection.
- <u>RFP 28.</u>  Documents, communications, and things referring or relating to or comprising contemplated or actual submissions to any governmental, standard-setting, or trade organization, including U.S. Department of Transportation, Federal Railroad Administration, and Association of American Railroads, concerning the 2009 NSC Jennies, the 2024 NSC Jennies, or other NSC Jennies.
- <u>RFP 29.</u>  Communications with any governmental, standard-setting, or trade organization, including U.S. Department of Transportation, Federal Railroad Administration, and Association of American Railroads, concerning the 2009 NSC Jennies, the 2024 NSC Jennies, or other NSC Jennies.
- <u>RFP 53.</u>  Documents referring or relating to or comprising license agreements, settlement agreements, patent purchase agreements, covenants not to sue, stand-down agreements, negotiations, and settlement offers concerning any Asserted Patent, any Related Patent, or any technology or other intellectual property related to railcars.
- <u>RFP 55.</u>  All documents, communications, and things referring or relating to any comparison between an NSC railcar and a FreightCar America railcar.
- <u>RFP 57.</u>  Documents sufficient to identify all license agreements, settlement agreements, patent purchase agreements, covenants not to sue, stand-down agreements, negotiations, and settlement offers conferring any rights to an Asserted Patent and, for each, all parties thereto, the date, and the rights conferred.

Please confirm by August 5 that NSC will modify or supplement its search terms to address the full scope of FreightCar America's RFPs.

### Search Terms Selected by FreightCar America Pursuant to Default Standard ¶ 5.b

We also follow up regarding the additional search terms FreightCar America has selected pursuant to Default Standard ¶ 5.b.

Everlaw states it has a "dtSearch® Translation" feature, which is described in an article on Everlaw's website at https://support.everlaw.com/hc/en-us/articles/4415562593179-dtSearch-Translation.  That article states users can obtain a translation report that shows the Everlaw translation of each dtSearch term.  Please confirm NSC has used Everlaw's dtSearch® Translation feature to translate the dtSearch terms FreightCar America provided on July 7.  If so, then please provide the translation report to FreightCar America by August 5.

For convenience and clarity, FreightCar America's ¶ 5.b terms are reproduced below, with a typographic error in Term 4 corrected:

1. "Freight Car" OR FreightCar* OR FCA*
2. "Canadian National" OR CN* OR *@cn.ca
3. ARI* OR Greenbrier* OR GBR* OR Trinity*
4. ((Department OR Dept*) W/2 Transp*) OR "DOT" OR "D.O.T." OR (Fed* W/2 Railroad) OR FRA OR "F.R.A."

# Knobbe Martens

5. cyclopedia* OR "car builders' dictionary" OR "car builder's dictionary" OR "car builders dictionary" OR (Hart AND patent) OR "992,192" OR 992192 OR (Lindstrom AND patent) OR (Lindström AND patent) OR "1,321,928" OR 1321928

6. "machinery space" AND (structure* OR support* OR "elephant ear" OR reinforce* OR free OR open)

7. "web continuity" OR ("side wall" AND (support* OR stiffen* OR reinforce*) AND (vertical* OR align*))

8. (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (market* or improve* OR advance* OR advantage* OR opportunit* OR compet* OR "selling point" OR requirement* OR goal* OR objective* OR share*)

9. (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (presentation* OR powerpoint* OR slides OR memo* OR projection* OR estimat* OR licens*)

Please apply term 2 to all subject email ESI in the date ranges 1/1/2007 to 9/11/2009 and 1/1/2018 to 12/31/2023, which are tailored to the date ranges of NSC's bids for the 2009 and 2024 Jennies.  Please apply term 5 to all subject email ESI without temporal limitation, pursuant to paragraph 4.e. of the Delaware Default Standard for Discovery, Including Discovery of ESI.

Please confirm by August 5 that NSC will apply FreightCar America's additional search terms to both email and non-email ESI  in the date ranges noted above.

Sincerely,

Justin Gillett

# EXHIBIT 5

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Justin Gillett
Justin.Gillett@knobbe.com

August 29, 2025

**VIA EMAIL**

Safet Metjahic
Robert D. Keeler
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036

Kenneth Sheehan
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001

Re:     *National Steel Car Limited v. FreightCar America, Inc.*, No. 1:24-cv-00594-JLB-CJB (D. Del.)

Counsel:

Thank you for agreeing to confer on  search terms on Tuesday.  Below are the issues that FreightCar America would like to discuss as well as our compromise proposals on certain issues.

### I. Search Terms for NSC's ESI

#### A.   NSC's Search Terms

NSC Term 11.  NSC proposes modifying its search term as shown below.

> "8166892" OR "8,166,892" OR "12/780,741" OR "2011/0041724" OR "20110041724" OR "8132515" OR "8,132,515" OR "12816,660" OR "12816660" OR "2010/0251922" OR "20100251922" OR "2678447" OR "2678605" OR "12559,065" OR "200405.00128" OR "200405.00139" OR "Railroad gondola car structure and mechanism therefor"

Please add the following: OR "12/816,660" OR "12/559,065" OR "12559065"

#### B.   FreightCar America's Search Terms

Date Ranges.   Please confirm that you are using the date ranges noted in the following portion of FreightCar America's July 29 letter:

> Please apply term 2 to all subject email ESI in the date ranges 1/1/2007 to 9/11/2009 and 1/1/2018 to 12/31/2023, which are tailored to the date ranges of NSC's bids for the 2009 and 2024 Jennies.  Please apply term 5 to all subject email ESI without temporal limitation, pursuant to paragraph 4.e. of the Delaware Default Standard for Discovery, Including Discovery of ESI.

FCA Term 1: "Freight Car" OR FreightCar* OR FCA*.   NSC agreed to search for and produce "documents, communications, and things referring to FreightCar America or a FreightCar America railcar" (RFP 4).  This term targets those documents.  NSC proposes narrowing this term to target only the subset of references to FreightCar America that appear in emails with CN (i.e., containing the term @cn.ca).  The remaining responsive documents are highly relevant and should not be excluded.  Please reconsider your refusal to use this term.

FCA Term 2: "Canadian National" OR CN* OR *@cn.ca.   NSC agreed to search for and produce many categories of documents referencing CN, including those requested by RFP Nos. 14, 20, 22-23, and 33-34.  This search term

# Knobbe Martens

targets documents referencing CN. NSC argues its search terms targeting RFQ and production numbers for NSC's jennies "reasonably capture communications with CN." We disagree. Further, if running the term produces some duplicate hits, these can be eliminated in a de-duplication process. Documents referring to CN are highly relevant to multiple issues in the case. Please reconsider using this term.

FCA Term 3: ARI* OR Greenbrier* OR GBR* OR Trinity*. FreightCar America has requested and is entitled to "[d]ocuments referring or relating to or comprising any communications between NSC and CN that mention FreightCar America or another railcar manufacturer" (RFP 24). This search term targets documents referring to a narrowed set of railcar manufacturers. NSC proposes further narrowing this search term to target only the subset of subject communications in the form of email (i.e., containing the term @cn.ca). In our call today, we discussed NSC's request for certain documents relating to competitors. FreightCar America suggests that the parties agree on a reciprocal arrangement in which the parties search for and produce the same types of documents. It should then be simple to revise this search term in accordance with that agreement.

FCA Term 4: ((Department OR Dept*) W/2 Transp*) OR "DOT" OR "D.O.T." OR (Fed* W/2 Railroad) OR FRA OR "F.R.A.". FreightCar America requested communications with "any governmental, standard-setting, or trade organization, including U.S. Department of Transportation, Federal Railroad Administration, and Association of American Railroads, concerning the 2009 NSC Jennies, the 2024 NSC Jennies, or other NSC Jennies" (RFPs 28-29). NSC has requested similar documents and FreightCar America has agreed to search for and produce them (NSC RFP 51). Please reconsider your refusal to use this term.

FCA Term 6: "machinery space" AND (structure* OR support* OR "elephant ear" OR reinforce* OR free OR open); FCA Term 7: "web continuity" OR ("side wall" AND (support* OR stiffen* OR reinforce*) AND (vertical* OR align*)). These terms are narrowly tailored to target emails discussing features of the asserted patents that played key roles in the patents' prosecution histories. Please reconsider your refusal to use these terms.

FCA Term 8: (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (market* or improve* OR advance* OR advantage* OR opportunit* OR compet* OR "selling point" OR requirement* OR goal* OR objective* OR share*). NSC has stated that this term hits on a burdensome number of emails. In the spirit of compromise, FCA would agree to narrow the second half of the expression to (advance* OR improve* OR advantage*). Please let us know whether NSC will agree to run this narrowed version of the search term.

FCA Term 9: (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (presentation* OR powerpoint* OR slides OR memo* OR projection* OR estimat* OR licens*). This term targets documents, presentations, memoranda, financials, and licenses related to NSC's Jennies. Please reconsider your refusal to run this term.

Everlaw Report. Everlaw states it has a "dtSearch® Translation" feature, which is described in an article on Everlaw's website at https://support.everlaw.com/hc/en-us/articles/4415562593179-dtSearch-Translation. That article states users can obtain a translation report that shows the Everlaw translation of each dtSearch term. Please provide a translation report for the FCA-proposed terms.

## C. Additional Issues

Non-Email ESI. NSC's August 5 letter states, "NSC has collected its non-email ESI by downloading all relevant files from network drives that are associated with the relevant RFQs and railcar manufacturing processes." Please confirm that NSC has applied or will apply the parties' search terms to the non-custodial data sources it identified under ¶ 3(b) of the Default Standard.

## II. Search Terms for FreightCar America's ESI

### A. FreightCar America's Search Terms

FCA Term 5: (550043 OR DMIR8~) AND (sale~ AND benefit~). NSC has asked FreightCar America to expand this search term to (550043 OR DMIR8~) AND (sale~ OR benefit~). Please identify the basis for NSC's request.

knobbe.com

# Knobbe Martens

FCA Term 6: ("8166892") OR ("8,166,892") OR ("8132515") OR ("8,132,515").  NSC has asked FreightCar America to expand this search term to "8166892" OR "8,166,892" OR "12780,741" OR "20110041724" OR "20110041724" OR "8132515" OR "8,132,515" OR "12816,660" OR "12816660" OR "20100251922" OR "20100251922" OR "2678447" OR "2678605" OR "12559,065" OR "200405.00128" OR "200405.00139" OR "Railroad gondola car structure and mechanism therefor".  Please identify the basis for NSC's request.

### B.  NSC's ¶ 5(b) Responsive Search Terms

NSC Term 1: 550043*.  This term reflects the order number for FreightCar America's 2024 Jennies.  FreightCar America is willing to run the term without quotation marks and with the wildcard, if NSC agrees to do the same (in NSC's first search term) with the order number for NSC's 2009 jenny.

NSC Term 2: (NSC OR "National Steel Car") AND patent*.  In the spirit of compromise, FreightCar America agrees to run the following search term:

(NSC OR "National Steel Car") W/15 patent*

Please explain why NSC believes there is good cause to apply search term 2 from March 13, 2012, to present.

NSC Term 3: (DMIR OR "Duluth Missabe and Iron Range" OR "ore car") AND (CN OR "Canadian National" OR @cn.ca).  FreightCar proposes the following compromise term:

(DMIR OR "Duluth Missabe and Iron Range" OR "ore car") W/5 (CN OR "Canadian National" OR @cn.ca)

NSC Term 4: (Inspect* OR report OR review OR cop*) AND ("NSC" OR "National Steel Car" OR CN OR "Canadian National" OR DMIR OR "Duluth Missabe and Iron Range" OR "ore car").  This term is overbroad.  It would force FreightCar America to review hundreds of thousands of largely irrelevant documents.  Please propose a narrower version of this term.

Sincerely,

Justin Gillett

# EXHIBIT 6

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Justin Gillett
Justin.Gillett@knobbe.com

September 5, 2025

**VIA EMAIL**

Safet Metjahic
Robert D. Keeler
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036

Kenneth Sheehan
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001

Re:    *National Steel Car Limited v. FreightCar America, Inc.*, No. 1:24-cv-00594-JLB-CJB (D. Del.)

Counsel:

We write regarding search terms following the parties' conference of counsel on September 2.  We appreciate NSC's efforts to compromise where possible.  We've proposed additional compromises below.

## I.    Search Terms for NSC's ESI

### A.    NSC's Search Terms

NSC Term 1: "P6030-08" OR "P603008" OR "P-6030/08" OR "P6030/08".  During our call, NSC agreed to remove quotation marks and add wildcards in this search term, as shown below.

> "P6030-08*" OR "P603008*" OR "P-6030/08*" OR "P6030/08*"

NSC Term 11.  NSC agreed to add the variants shown in redline below.

> "8166892" OR "8,166,892" OR "12/780,741" OR "2011/0041724" OR "20110041724" OR "8132515" OR "8,132,515" OR "12816,660" OR "12816660" OR "12/816,660" OR "2010/0251922" OR "20100251922" OR "2678447" OR "2678605" OR "12559,065" OR "12/559,065" OR "12559065" OR "200405.00128" OR "200405.00139" OR "Railroad gondola car structure and mechanism therefor"

### B.    FreightCar America's Search Terms

FCA Term 1: "Freight Car" OR FreightCar* OR FCA*.  Before the parties conferred, NSC proposed narrowing this term to target only the subset of references to FreightCar America that appear in emails with CN (i.e., containing the term @cn.ca).  But that proposal would exclude responsive documents that are highly relevant.  In the spirit of compromise, FreightCar America would agree to narrow this term as shown below.  Please let us know whether this proposed compromise is acceptable to NSC.

> ("Freight Car" OR FreightCar* OR FCA*) AND ("Canadian National" OR CN* OR presentation* OR memo* OR slide* OR report* OR inspect* OR "site visit" OR analy* OR compar*)

FCA Term 2: "Canadian National" OR CN* OR *@cn.ca.  During the parties' conference, NSC asked that FreightCar America propose a narrower term.  Per NSC's request, FreightCar America proposes the narrowed versions of this term shown below.  Please let us know whether NSC agrees to run these narrowed terms.

# Knobbe Martens

"Canadian National" OR CN* OR *@cn.ca AND (jenny~ OR jennies OR ("open top" AND "bottom discharge") OR ore OR FreightCar* OR FCA*)

("Canadian National" OR CN* OR *@cn.ca) AND (presentation* OR memo* OR slide* OR problem* OR hinge* OR require* OR want* OR prefer*)

Please also let us know whether NSC will apply term 2 in the date ranges 1/1/2007 to 9/11/2009 and 1/1/2018 to 12/31/2023, which are tailored to the date ranges of NSC's bids for the 2009 and 2024 Jennies.

<u>FCA Term 3: ARI* OR Greenbrier* OR GBR* OR Trinity*.</u>  NSC proposed narrowing this term to target only the subset of subject communications in the form of email (i.e., containing the term @cn.ca).  In the spirit of compromise, FreightCar America accepts NSC's proposal.

<u>FCA Term 4: ((Department OR Dept*) W/2 Transp*) OR "DOT" OR "D.O.T." OR (Fed* W/2 Railroad) OR FRA OR "F.R.A.".</u>  FreightCar America proposes the narrowed version of this term shown below.  Please let us know whether NSC agrees to run this narrowed term.

((Department OR Dept*) W/2 Transp*) OR "DOT" OR "D.O.T." OR (Fed* W/2 Railroad) OR FRA OR "F.R.A." AND (jenny OR jennies OR ore OR DMIR OR Duluth OR CN OR "Canadian National")

<u>FCA Term 5 (cyclopedia* OR "car builders' dictionary" OR "car builder's dictionary" OR "car builders dictionary" OR (Hart AND patent) OR "992,192" OR 992192 OR (Lindstrom AND patent) OR (Lindström AND patent) OR "1,321,928" OR 1321928):</u> During our call, NSC stated that it is applying term 5 without temporal limitation, pursuant to paragraph 4.e. of the Delaware Default Standard for Discovery, Including Discovery of ESI ("the Default Standard").

<u>FCA Term 6: "machinery space" AND (structure* OR support* OR "elephant ear" OR reinforce* OR free OR open);</u> <u>FCA Term 7: "web continuity" OR ("side wall" AND (support* OR stiffen* OR reinforce*) AND (vertical* OR align*)).</u> During the parties' conference, NSC admitted these terms do not hit on many documents.  These terms are narrowly tailored to features of the asserted patents that played key roles in the patents' prosecution histories.  Please reconsider your refusal to search NSC's ESI using these terms.

<u>FCA Term 8: (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (market* OR improve* OR advance* OR advantage* OR opportunit* OR compet* OR "selling point" OR requirement* OR goal* OR objective* OR share*).</u>  Before the parties conferred, FreightCar America proposed the narrowed version of this term shown below.  During the conference, NSC stated it would consider FreightCar America's proposal.  Please let us know whether NSC will accept the proposed compromise.

(jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (market* OR improve* OR advance* OR advantage* OR opportunit* OR compet* OR "selling point" OR requirement* OR goal* OR objective* OR share*)

<u>FCA Term 9: (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (presentation* OR powerpoint* OR slides OR memo* OR projection* OR estimat* OR licens*).</u>  During the parties' conference, FreightCar America proposed the narrowed version of this term shown below.  NSC stated it would consider FreightCar America's proposal.  Please let us know whether NSC agrees to run the proposed narrowed term.

(jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (presentation* OR powerpoint* OR slides OR memo* OR projection* OR estimat* OR licens*)

<u>Everlaw Report</u>.  During the parties' conference, NSC stated it would provide a translation report that shows the Everlaw translation of each dtSearch term.  We look forward to promptly receiving that report.

# Knobbe Martens

### C.  Additional Issues

Non-Email ESI.  During the parties' conference, NSC stated it has not applied search terms to the non-custodial data sources it identified under ¶ 3(b) of the Default Standard.  Please confirm NSC will do so, in compliance with Default Standard ¶ 5(b).

## II.  Search Terms for FreightCar America's ESI

### A.  FreightCar America's Search Terms

FCA Term 5: (550043 OR DMIR8~) AND (sale~ AND benefit~).  NSC has asked FreightCar America to expand this search term as shown below.  FreightCar America agrees to do so.

> (550043 OR DMIR8~) AND (sale~ ~~AND~~ OR benefit~)

FCA Term 6: ("8166892") OR ("8,166,892") OR ("8132515") OR ("8,132,515").  NSC has asked FreightCar America to expand this search term as follows.  FreightCar America agrees to do so.

> "8166892"  OR  "8,166,892"  OR "12780,741" OR "20110041724" OR "20110041724"  OR  "8132515"  OR "8,132,515"  OR "12816,660" OR "12816660" OR "20100251922" OR "20100251922" OR "2678447" OR "2678605" OR "12559,065" OR "200405.00128" OR "200405.00139" OR "Railroad gondola car structure and mechanism therefor"

### B.  NSC's ¶ 5(b) Responsive Search Terms

NSC Term 1: 550043*.  This term reflects the order number for FreightCar America's 2024 Jennies.  FreightCar America offered to run this term as NSC proposed—without quotation marks and with the wildcard—if NSC agrees to similarly remove quotation marks and add wildcards in NSC's first search term regarding the order number for NSC's 2009 jenny.  We believe NSC agreed to the proposal during our call, but please confirm that.

NSC Term 2: (NSC OR "National Steel Car") AND patent*.  FreightCar America offered to run the version of this term shown below.  During the parties' conference, NSC stated it would consider FreightCar America's offer.  Please let us know whether NSC agrees.

> (NSC OR "National Steel Car") W/15 patent*

NSC Term 3: (DMIR OR "Duluth Missabe and Iron Range" OR "ore car") AND (CN OR "Canadian National" OR @cn.ca).  This term is overbroad.  However, both this term and FCA Term 2 (for NSC's ESI) target documents referencing CN.  If NSC accepts FreightCar America's compromise proposal for FCA Term 2 (for NSC's ESI), then FreightCar America will run this NSC Term 3 (for FreightCar America's ESI).  Please let us know whether NSC will agree to this proposal.

NSC Term 4: (Inspect* OR report OR review OR cop*) AND ("NSC" OR "National Steel Car" OR CN OR "Canadian National" OR DMIR OR "Duluth Missabe and Iron Range" OR "ore car").  During the parties' conference, NSC stated it would propose a narrower version of this term.  We look forward to receiving NSC's proposal.

Sincerely,

Justin Gillett

# EXHIBIT 7

| | |
|---|---|
| **From:** | Justin Gillett |
| **To:** | "Kevin.Adams@icemiller.com" |
| **Cc:** | IM-NSClit@icemiller.com; Safet.Metjahic@icemiller.com; SKNationalSteelCar; Lit FCAL.001L; John Shaw; Jack Phillips; David A  Bilson; Ken Sheehan@icemiller com; Andrew Russell; Robert Keeler@icemiller com |
| **Subject:** | RE: NSC v. FreightCar America - compromise offers |
| **Date:** | Tuesday, September 23, 2025 8:54:00 AM |
| **Attachments:** | image001.png |

Kevin,

NSC's proposed edits to the draft letter to Judge Burke add argument for each listed dispute and make the request for teleconference unilateral – NSC proposes no other edits.  This is contrary to the Court's scheduling order.  Please confirm by 3:00 p.m. Eastern that FreightCar America has NSC's permission to file the version of the letter attached to my September 18 email in this thread, which is a joint request for discovery teleconference with a non-argumentative list of disputes.

FreightCar America offers the following further compromises regarding the search terms it selected for NSC's ESI pursuant to the Court's ESI order.  Please let us know whether NSC agrees to those further compromises.  FreightCar America intends to move regarding any of its responsive search terms that are not resolved by 3:00 p.m. Eastern.

> FCA Term 1: ("Freight Car" OR FreightCar* OR FCA*) AND ("Canadian National" OR CN* OR presentation* ~~OR memo*~~ OR slide* OR report* OR inspect* OR "site visit" OR analy* OR compar*)
>
> FCA Term 2b: ("Canadian National" OR CN*) AND (presentation* ~~OR memo*~~ OR slide* OR problem* OR hinge* OR require* OR want* OR prefer*)
>
> FCA Term 4: ((Department OR Dept*) W/2 Transp*) OR "DOT" OR "D.O.T." OR (Fed* W/2 Railroad) OR FRA OR "F.R.A." AND (~~jenny OR jennies OR ore OR~~ DMIR OR Duluth OR CN OR "Canadian National")
>
> FCA Term 8: (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (improve* ~~OR advance*~~ OR advantage*)
>
> FCA Term 9: (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (presentation* OR powerpoint* OR slides ~~OR memo~~ )

Best regards,
Justin

---

**From:** Kevin.Adams@icemiller.com <Kevin.Adams@icemiller.com>
**Sent:** Monday, September 22, 2025 12:40 PM
**To:** Justin Gillett <Justin.Gillett@knobbe.com>
**Cc:** IM-NSClit@icemiller.com; Safet.Metjahic@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Jack Phillips <JCP@PMHDELaw.com>; David A. Bilson

<DAB@PMHDELaw.com>; Ken.Sheehan@icemiller.com; Andrew Russell <arussell@shawkeller.com>; Robert.Keeler@icemiller.com
**Subject:** RE: NSC v. FreightCar America - compromise offers

Justin,

Thank you for the draft letter. We have reviewed the same and do not believe there are any issues raised in your letter that are ripe judicial intervention.

For example, regarding FreightCar RFP Nos. 16-17, NSC has performed a reasonable search pursuant to the parties' July 24 meet and confer and twice reported to FreightCar that no additional information was found. *See* 2025.08.15 Letter from Keeler to Gillett, 2025.09.05 Letter from Keller to Gillett.   This appears to be the same for FreightCar RFP Nos. 14, 24, 25,39, 55,  and 60. *See* 2025.09.05 Letter from Keller to Gillett.  Accordingly, NSC requests FreightCar articulate with particularity what the disputes are regarding these RFPs. Further, FreightCar has failed to articulate why NSC's September 15th supplement of its response to Interrogatory No. 6 is deficient. *See* 2025.09.05 Letter from Keller to Gillett. Please do so.

Regarding the "new disputes," NSC notes that FreightCar moved to amend its answers and counterclaims to add inequitable conduct on Friday, September 19. Therefore, NSC does not believe it is appropriate to move the Court for discovery regarding Interrogatory 15 while FreightCar's motion to amend is pending. Similarly, the parties are in negotiations regarding search terms and NSC believes it is premature to involve the Court in the same.

Regardless, if FreightCar wishes to file its letter with the Court, it is free to do so. Please find attached NSC's redlines to the same.

Best,
Kevin

**Kevin Adams** | Associate

**P** 202-807-4021  **F** 202-824-8667

200 Massachusetts Ave NW Suite 400 Washington, DC 20001

Kevin.Adams@icemiller.com  |  **icemiller.com**

---

**From:** Sheehan, Kenneth <Ken.Sheehan@icemiller.com>
**Sent:** Friday, September 19, 2025 12:34 PM
**To:** Justin Gillett <Justin.Gillett@knobbe.com>; Andrew Russell <arussell@shawkeller.com>; Keeler, Robert <Robert.Keeler@icemiller.com>
**Cc:** IM-NSClit <IM-NSClit@icemiller.com>; Metjahic, Safet <Safet.Metjahic@icemiller.com>; Adams, Kevin <Kevin.Adams@icemiller.com>; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Jack Phillips <JCP@PMHDELaw.com>; David A. Bilson <DAB@PMHDELaw.com>
**Subject:** RE: NSC v. FreightCar America - compromise offers

Counsel,

Unfortunately, Rob is out today at a funeral and Kevin is out of the country on his honeymoon until next week.  Because they were the only participants from our firm in some of the meet and confers referenced in your letter, we will not be able to respond today but will get back to you on Monday with any edits.

Regards,

Ken

**Kenneth Sheehan  |  Partner**

**Ice**Miller

**P** 202-807-4008   **C** 703-304-7012   **F** 202-824-8667

200 Massachusetts Ave NW Suite 400 Washington, DC 20001

Ken.Sheehan@icemiller.com  |  **ice**miller.com

---

**From:** Justin Gillett <Justin.Gillett@knobbe.com>
**Sent:** Thursday, September 18, 2025 9:03 PM
**To:** Andrew Russell <arussell@shawkeller.com>; Keeler, Robert <Robert.Keeler@icemiller.com>
**Cc:** IM-NSClit <IM-NSClit@icemiller com>; Sheehan, Kenneth <Ken Sheehan@icemiller com>; Metjahic, Safet <Safet.Metjahic@icemiller.com>; Adams, Kevin <Kevin.Adams@icemiller.com>; SKNationalSteelCar <SKNationalSteelCar@shawkeller com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Jack Phillips <JCP@PMHDELaw.com>; David A. Bilson <DAB@PMHDELaw.com>
**Subject:** RE: NSC v. FreightCar America - compromise offers

Counsel,

I'm attaching a draft joint letter to Judge Burke regarding the issues the parties raised in their July 18 joint letter and have not been able to resolve, FreightCar America's interrogatory 15, and issues related to search terms discussed in my September 5 letter.  Please provide any edits and permission to file by 2:00 Eastern tomorrow.

Best regards,
Justin

---

**From:** Justin Gillett <Justin.Gillett@knobbe.com>
**Sent:** Wednesday, September 3, 2025 5:13 PM
**To:** Andrew Russell <arussell@shawkeller.com>; Robert.Keeler@icemiller.com
**Cc:** IM-NSClit@icemiller.com; Ken.Sheehan@icemiller.com; Safet.Metjahic@icemiller.com; Kevin.Adams@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L

<LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Jack Phillips <JCP@PMHDELaw.com>; David A. Bilson <DAB@PMHDELaw.com>

**Subject:** RE: NSC v. FreightCar America - compromise offers

Counsel,

Please see the attached correspondence.

Best regards,
Justin

---

**From:** David A. Bilson <DAB@PMHDELaw.com>
**Sent:** Monday, July 28, 2025 3:23 PM
**To:** Andrew Russell <arussell@shawkeller.com>; Robert.Keeler@icemiller.com; Justin Gillett <Justin.Gillett@knobbe.com>
**Cc:** IM-NSClit@icemiller.com; Ken.Sheehan@icemiller.com; Safet.Metjahic@icemiller.com; Kevin.Adams@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Jack Phillips <JCP@PMHDELaw.com>
**Subject:** RE: NSC v. FreightCar America - compromise offers

The as-filed letter is attached.  Thanks

David A. Bilson

Phillips McLaughlin & Hall, P.A.

1200 N. Broom Street

Wilmington, DE 19806-4204

302-655-4200 (Tel.)

302-655-4210 (Fax)

dab@pmhdelaw.com

www.pmhdelaw.com

---

**From:** Andrew Russell <arussell@shawkeller.com>
**Sent:** Monday, July 28, 2025 6:15 PM
**To:** David A. Bilson <DAB@PMHDELaw.com>; Robert.Keeler@icemiller.com; Justin Gillett <Justin.Gillett@knobbe.com>
**Cc:** IM-NSClit@icemiller.com; Ken.Sheehan@icemiller.com; Safet.Metjahic@icemiller.com; Kevin.Adams@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Jack Phillips <JCP@PMHDELaw.com>
**Subject:** Re: NSC v. FreightCar America - compromise offers

Confirmed, thanks Dave.

Andrew E. Russell

Shaw Keller LLP

I.M. Pei Building

1105 North Market Street, 12th Floor

Wilmington, DE 19801

(302) 298-0704

Visit ipde.com for updates about IP litigation and the District of Delaware.

---

**From:** David A. Bilson <DAB@PMHDELaw.com>

**Date:** Monday, July 28, 2025 at 6:05 PM

**To:** Robert.Keeler@icemiller.com <Robert.Keeler@icemiller.com>, Justin Gillett <Justin.Gillett@knobbe.com>

**Cc:** IM-NSClit@icemiller com <IM-NSClit@icemiller com>, Ken Sheehan@icemiller com <Ken.Sheehan@icemiller.com>, Safet.Metjahic@icemiller.com <Safet.Metjahic@icemiller.com>, Kevin.Adams@icemiller.com <Kevin.Adams@icemiller.com>, SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>, Lit FCAL.001L <LitFCAL.001L@knobbe.com>, John Shaw <jshaw@shawkeller.com>, Andrew Russell <arussell@shawkeller.com>, Jack Phillips <JCP@PMHDELaw.com>

**Subject:** RE: NSC v. FreightCar America - compromise offers

John/Andrew – Would you please confirm that I have your consent to file the attached?

Thanks

Dave

David A. Bilson

Phillips McLaughlin & Hall, P.A.

1200 N. Broom Street

Wilmington, DE 19806-4204

302-655-4200 (Tel.)

302-655-4210 (Fax)

dab@pmhdelaw.com

www.pmhdelaw.com

Phillips, McLaughlin & Hall, P.A.

1200 North Broom Street

Wilmington DE, 19806

Offices: (302) 655-4200 | Fax: (302) 655-4210 | PMHDELaw com

*This message and any attachments may contain confidential and attorney-client privileged information and are intended only for the use of the intended recipients of this message. If you are not the intended recipient of this message, or the employee or agent responsible to deliver it to the intended recipient, please notify the sender by return email, and delete this and all copies of this message and any attachments from your system. You are hereby notified that any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is strictly prohibited and may be unlawful.*

**From:** Robert.Keeler@icemiller.com <Robert.Keeler@icemiller.com>
**Sent:** Monday, July 28, 2025 5:54 PM
**To:** Justin Gillett <Justin.Gillett@knobbe.com>
**Cc:** IM-NSClit@icemiller.com; Ken.Sheehan@icemiller.com; Safet.Metjahic@icemiller.com; Kevin.Adams@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Andrew Russell <arussell@shawkeller.com>; Jack Phillips <JCP@PMHDELaw.com>; David A. Bilson <DAB@PMHDELaw.com>
**Subject:** RE: NSC v. FreightCar America - compromise offers

Counsel,

We disagree that NSC provided improper argument. NSC was simply providing additional facts to add context to FreightCar's original letter.

Regardless, you have our permission to file.

Also, please confirm the date certain that FreightCar will produce the CAD and PDM files.

Regards,
Rob



**Robert Keeler** | Associate

P 212-824-4961
1500 Broadway Suite 2900 New York, NY 10036
Robert.Keeler@icemiller.com | **icemiller.com**

**From:** Justin Gillett <Justin Gillett@knobbe com>

**Sent:** Monday, July 28, 2025 5:29 PM
**To:** Keeler, Robert <Robert.Keeler@icemiller.com>
**Cc:** IM-NSClit <IM-NSClit@icemiller.com>; Sheehan, Kenneth <Ken.Sheehan@icemiller.com>; Metjahic, Safet <Safet.Metjahic@icemiller.com>; Adams, Kevin <Kevin.Adams@icemiller.com>; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Andrew Russell <arussell@shawkeller.com>; JCP@PMHDELaw.com; dab@pmhdelaw.com
**Subject:** RE: NSC v. FreightCar America - compromise offers

Counsel,

NSC has injected improper argument into the joint letter less than fifteen minutes before the deadline to file. FreightCar America cannot agree to include that improper argument in the parties' joint filing. Please confirm we have NSC's permission to file the attached version that excludes, for each issue, both FreightCar America's factual report and NSC's improper argument.

Best regards,
Justin

---

**From:** Robert.Keeler@icemiller.com <Robert.Keeler@icemiller.com>
**Sent:** Monday, July 28, 2025 1:46 PM
**To:** Justin Gillett <Justin.Gillett@knobbe.com>
**Cc:** IM-NSClit@icemiller.com; Ken.Sheehan@icemiller.com; Safet.Metjahic@icemiller.com; Kevin.Adams@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Andrew Russell <arussell@shawkeller.com>; JCP@PMHDELaw.com; dab@pmhdelaw.com
**Subject:** RE: NSC v. FreightCar America - compromise offers

Counsel,

FreightCar's proposal goes beyond what was requested by the Court. We can either report that everything was tabled, or include the additional redlines attached.

Given the time constraints, we are happy to stipulate to moving the deadline for filing the letter to tomorrow.

Regards,
Rob

**Robert Keeler** | Associate

## IceMiller

**P** 212-824-4961
1500 Broadway Suite 2900 New York, NY 10036
Robert.Keeler@icemiller.com | **icemiller.com**

**From:** Justin Gillett <Justin.Gillett@knobbe.com>
**Sent:** Monday, July 28, 2025 3:18 PM
**To:** Keeler, Robert <Robert.Keeler@icemiller.com>
**Cc:** IM-NSClit <IM-NSClit@icemiller.com>; Sheehan, Kenneth <Ken.Sheehan@icemiller.com>; Metjahic, Safet <Safet.Metjahic@icemiller.com>; Adams, Kevin <Kevin.Adams@icemiller.com>; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Andrew Russell <arussell@shawkeller.com>; JCP@PMHDELaw.com; dab@pmhdelaw.com
**Subject:** RE: NSC v. FreightCar America - compromise offers

Counsel,

I'm attaching a proposed joint letter to the Court.  Please let us know whether we have your permission to file.  Regarding NSC's request for additional CAD-related files, yes, we will produce responsive PDM information that FreightCar America possesses.

Best regards,
Justin

**From:** Robert.Keeler@icemiller.com <Robert.Keeler@icemiller.com>
**Sent:** Monday, July 28, 2025 9:21 AM
**To:** Justin Gillett <Justin.Gillett@knobbe.com>
**Cc:** IM-NSClit@icemiller.com; Ken.Sheehan@icemiller.com; Safet.Metjahic@icemiller.com; Kevin.Adams@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Andrew Russell <arussell@shawkeller.com>; JCP@PMHDELaw.com; dab@pmhdelaw.com
**Subject:** RE: NSC v. FreightCar America - compromise offers

Counsel,

Thank you for your email and our productive meet and confer on July 24, 2025.

Regarding FreightCar's refusal to produce individual CAD files for each part of the Accused Products (and not merely one overarching CAD file that does not contain complete metadata for each part) and information from systems for managing CAD files that show metadata like dates modified (i.e., PDM systems), FreightCar confirmed that it would not produce these documents during our call, but instead offered to produce these documents if NSC produced inspection documents (as discussed below). After the meet and confer, FreightCar stated that it would produce "the additional CAD files NSC seeks, to the extent FreightCar America has them." Please confirm a date certain by which FreightCar will make this production, and also confirm that FreightCar's production includes the information from systems for managing such CAD files because that is not mentioned in your email.

Regarding the issues that FreightCar added to the joint letter to Judge Burke, and as we discussed on the July 24 meet and confer, these issues were first raised and discussed during our meet and confers in February. FreightCar inquired again regarding these issues in its April 15,

2025 letter, to which NSC responded on April 23. NSC subsequently supplemented its responses to Interrogatories No. 3, 6, and 11, and produced additional documents. FreightCar never sent further correspondence or requested a meet and confer regarding the supplemental responses or production issues until FreightCar added these issues to the joint letter. Thus, we maintain that the issues were not ripe for inclusion in the joint letter.

Now that we have had an opportunity to meet and confer regarding the new issues FreightCar is raising, we have already contacted our client but cannot discuss these issues with them until later this week due to summer vacation scheduling. We will update you after we have spoken with our client but, in the interim, we summarize NSC's positions below:

Regarding Interrogatory No. 3, NSC agreed to investigate whether further supplementation of this Interrogatory Response was necessary and FreightCar agreed to table this issue for the purposes of the Court filing on Monday.

Regarding Interrogatory No. 6, NSC will supplement its Response by August 15.

Regarding Interrogatory No. 11, as the parties discussed, NSC agrees to identify the factual bases and any contentions regarding damages theories, to the extent it has not already done so. However, NSC will not supplement its Response to identify information not within NSC's possession, such as a calculation of a royalty rate or base, or a lost profit calculation. NSC will supplement its Response by August 15. We expect FreightCar to supplement its Response to NSC's Interrogatory No. 15 to reflect a similar scope of disclosure regarding factual bases and contentions.

Regarding RFP Nos. 16 and 17, to date, NSC has produced documents and communications with Canadian National ("CN") regarding the patent practicing products and bids to provide the same. FreightCar has repeatedly stated that, for these RFPs, FreightCar is seeking the same scope of discovery NSC is seeking from CN. As we discussed during the meet and confer, the discovery sought by NSC from CN is limited to open-top, bottom-discharge hoppers for use on the DMIR, which NSC has already produced. During the Thursday meet and confer, and for the first time, FreightCar took the position that it wants discovery regarding all open-top, bottom-discharge hoppers. We have not yet spoken to our client about this and will revert after we have done so, but it does not appear that NSC has sold or offered any other open-top, bottom-discharge hopper cars to CN since 2008, other than the patented instrumentalities. We note that FreightCar has only produced three communications with CN – its two quotations and contract to provide the infringing railcars – so FreightCar's request to compel NSC lacks proportionality at this stage (*see, e.g.,* NSC's RFP Nos. 3, 28-31, and 62). We trust that this is sufficient to table this discussion for now and remove it from the Court filing.

Regarding RFP Nos. 39 and 60, NSC maintains its objection to these requests as overly broad and not relevant to the extent they seek information regarding NSC open-top, bottom-discharge hoppers from NSC's over 100-year history which do not practice inventions claimed in the Asserted Patents. Nonetheless, NSC will explore the burden of collecting and producing these documents this week and revert. As stated during the Thursday meet and confer, NSC will likely propose date ranges to remedy the anticipated burden posed by these requests. We trust that this is sufficient to table this discussion for now and remove it from the Court filing.

Regarding RFP Nos. 14, 24, 25, and 55, it is disingenuous and lacks proportionality for FreightCar to seek to compel NSC to produce documents regarding any inspections it has performed in its over 100-year history when FreightCar has not yet produced any documents regarding its inspections, let alone inspections of the NSC product covered by the Asserted Patents (*see, e.g.,* NSC RFP Nos. 48, 55, 63). Nevertheless, we are conferring with our client this

week to determine the burden of producing documents regarding analyses or inspections of FreightCar railcars by NSC. In addition, we do not believe that all communications between CN and NSC that mention FreightCar are relevant, however, we are conferring with NSC this week to determine the burden of producing such documents and will revert. We trust that this is sufficient to table this discussion for now and remove it from the Court filing.

Finally, regarding Interrogatory No. 15, we asked FreightCar to identify the relevance of the intent of any non-disclosure of the prior art cited in that Interrogatory. FreightCar responded that the intent is relevant to novelty or non-obviousness. We are unaware of any case law that includes an element of intent in a novelty or non-obviousness analysis and requested the same during our meet and confer. Please provide that case law for our consideration.

Accordingly, as discussed above, please confirm FreightCar's position regarding CAD files and information from systems for managing CAD files. Also, please confirm whether the issues regarding Interrogatories 3, 6, and 11, and RFPs 14, 16, 17, 24, 25, 39, 55, and 60 can be tabled. Once FreightCar confirms the above, we will circulate a draft filing for today.

Regards,

Rob

**Robert Keeler** | Associate

**Ice**Miller

**P** 212-824-4961

1500 Broadway Suite 2900 New York, NY 10036

Robert.Keeler@icemiller.com | **icemiller.com**

---

**From:** Justin Gillett <Justin.Gillett@knobbe.com>
**Sent:** Thursday, July 24, 2025 9:16 PM
**To:** Sheehan, Kenneth <Ken.Sheehan@icemiller.com>; Metjahic, Safet <Safet.Metjahic@icemiller.com>; Keeler, Robert <Robert.Keeler@icemiller.com>; Adams, Kevin <Kevin.Adams@icemiller.com>
**Cc:** IM-NSClit <IM-NSClit@icemiller.com>; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Andrew Russell <arussell@shawkeller.com>; JCP@PMHDELaw.com; dab@pmhdelaw.com
**Subject:** RE: NSC v. FreightCar America - compromise offers

Counsel,

Thank you for conferring this afternoon.  As stated during our call, FreightCar America will table the issue regarding NSC's response to FreightCar America interrogatory no. 3, and looks forward to learning whether NSC will disclose what it contends to be the conception dates for each asserted claim. FreightCar America agrees to produce the additional CAD files NSC seeks, to the extent FreightCar America has them.  We look forward to NSC's response to the compromise offers in my email appearing below.

Best regards,

Justin

**From:** Justin Gillett
**Sent:** Thursday, July 24, 2025 12:57 PM
**To:** Ken.Sheehan@icemiller.com; Safet.Metjahic@icemiller.com; Robert.Keeler@icemiller.com; Kevin.Adams@icemiller.com
**Cc:** IM-NSClit@icemiller.com; SKNationalSteelCar <SKNationalSteelCar@shawkeller.com>; Lit FCAL.001L <LitFCAL.001L@knobbe.com>; John Shaw <jshaw@shawkeller.com>; Andrew Russell <arussell@shawkeller.com>; JCP@PMHDELaw.com; dab@pmhdelaw.com
**Subject:** NSC v. FreightCar America - compromise offers

Counsel,

In advance of today's conference regarding the parties' discovery disputes, FreightCar America offers the following compromises.

**NSC's damages disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), Scheduling Order ¶ 6.b., and FreightCar America interrogatory no. 11.** FreightCar America will drop this dispute from the parties' letter if NSC provides the following information:
- (a) a specific computation of each category of damages claimed, including an estimate of the amount of damages sought;
- (b) the factual bases and documents upon which NSC's alleged reasonable royalty contention is based, including identifying the royalty base, the royalty rate, any convoyed or collateral sales, any allegedly comparable license, and any other fact or document that is relevant to a Georgia Pacific factor; and
- (c) the factual bases and documents upon which NSC's lost-profits theory is based, including the documents supporting the profits and margins noted in the document bearing Bates numbers NSC012808-012812.

**Whether NSC may withhold certain categories of documents exchanged between NSC and Canadian National (FreightCar America RFPs 16-17).** FreightCar America will drop this dispute from the parties' letter if NSC agrees to produce documents responsive to RFPs 16-17 as narrowed in my April 15, 2025, letter to reflect the information NSC seeks from CN through letters rogatory, and further narrowing the definition of "Jenny" to those NSC designed or considered designing.

**Whether NSC may withhold documents regarding the design and shipment of its Jenny railcars that NSC contends do not practice the asserted patents (FreightCar America RFPs 39 and 60).** FreightCar America will table this dispute if NSC provides technical drawings and the first and last shipment dates for each NSC Jenny railcar.

**Whether NSC may withhold documents regarding its inspections of FreightCar America railcars (FreightCar America RFPs 25 & 55) and NSC's communications about FreightCar America and other railcar manufacturers (FreightCar America RFPs 14, 24) that it contends relate to railways other than the DMIR.** FreightCar America will table this dispute if NSC agrees to

produce document that mention (1) FreightCar America or (2) any analysis or inspection of a non-NSC railcar.


Best regards,
Justin


**Justin Gillett**
Partner
Justin.Gillett@knobbe.com
949-721-6322 **Direct**
**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/justin-gillett


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

********************************************************************************************************

*****************************************************

CONFIDENTIALITY NOTICE: This E-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this E-mail or any attachment is prohibited. If you have received this E-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system.
Thank you.
ICE MILLER LLP
********************************************************************************************************

*****************************************************


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# EXHIBIT 8

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Sean Murray
Sean.Murray@knobbe.com

October 30, 2025

**VIA EMAIL**

Safet Metjahic
Robert D. Keeler
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036

Kenneth Sheehan
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001

Re:     *National Steel Car Limited v. FreightCar America, Inc.*, No. 1:24-cv-00594-JLB-CJB (D. Del.)

Counsel:

We write regarding search terms for use in searching ESI.

### A.   FreightCar America's Search Terms 1, 2b, and 7-8

During the parties' lengthy discussions of search terms, FreightCar America attempted to reach a compromise by narrowing its Terms 1, 2 and 8, as follows:

Original Term 1:     "Freight Car" OR FreightCar* OR FCA*

Narrowed Term 1:     ("Freight Car" OR FreightCar* OR FCA*) AND ("Canadian National" OR CN* OR presentation* OR slide* OR report* OR inspect* OR "site visit" OR analy* OR compar*)

Original Term 2b:     ("Canadian National" OR CN*) AND (presentation* OR memo* OR slide* OR problem* OR hinge* OR require* OR want* OR prefer*) (date ranges 1/1/2007-9/11/2009 and 1/1/2018-12/31/2023)

Narrowed Term 2b:     ("Canadian National" OR CN*) AND (presentation* OR slide* OR problem* OR hinge* OR require* OR want* OR prefer*) (date ranges 1/1/2007-9/11/2009 and 1/1/2018-12/31/2023)

Original Term 8:     (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (market* OR improve* OR advance* OR advantage* OR opportunit* OR compet* OR "selling point" OR requirement* OR goal* OR objective* OR share*)

Narrowed Term 8:     (jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND (improve* OR advantage*)

FreightCar America made the compromise proposals above in correspondence dated September 5 and September 23.  FreightCar America did not offer to narrow Term 7, which is already narrowly tailored to target documents discussing the allegedly novel feature of the '892 patent.

# Knobbe Martens

During the parties' conference on September 26, NSC asserted that FreightCar America's search terms produced a large number of hits, on the order of 100,000 documents for Terms 1 and 2b.[1]  That these search terms produce many hits does not mean they are overbroad.  Terms 1 and 2b are directed to highly relevant documents at the center of this patent dispute.  If they produce a large number of hits, it is because NSC is in possession of a large number of relevant documents.

The parties also have disputes regarding NSC's Terms 3 and 4, which hit on a large number of irrelevant documents.  We note that NSC's Term 4 produces over 70,000 hits when we use it to search FreightCar America's ESI.  Under NSC's logic, that makes the term presumptively overbroad.  However, in a final attempt to resolve this search-term dispute, FreightCar America will agree to search using NSC's Terms 3 and 4 – as originally proposed by NSC – if NSC will search using FreightCar America's Terms 1, 2b, and 7-8 as narrowed in the proposals shown above.

In discussing FreightCar America's Terms 1, 2b, and 7-8, the Court stated that "it appears the parties are still discussing whether Plaintiff will search using the four terms at issue." D.I. 147.  Please let us know whether Plaintiff will accept FreightCar America's proposal and use those terms.

## B.  FreightCar America's Search Term 3

This term originally read: ARI* OR Greenbrier* OR GBR* OR Trinity*.  On August 5, 2025, NSC proposed narrowing this term to read: (ARI* OR Greenbrier* OR GBR* OR Trinity*) AND @cn.ca.  FreightCar America accepted NSC's proposal in a letter dated September 5, 2025.  NSC now appears to be attempting to tear up the parties' agreement.  In a letter dated September 29, NSC stated that it wished to further narrow Term 3 by removing the asterisks on the individual words in the term.  FreightCar America cannot agree to this modification, as it would eliminate many documents that are no less relevant than the documents the modified term would identify.  Please confirm NSC will run the parties' agreed term.

Sincerely,

Sean Murray

---

[1] During the parties' conference, FreightCar America proposed ways to potentially narrow the search terms and decrease the hit counts, and it suggested that NSC provide hit-count information for those proposals.  NSC agreed during the call to do so but has not yet provided that information.

# EXHIBIT 9



| 1500 Broadway | 29th Floor | New York, NY 10036 |

WRITER'S DIRECT NUMBER: (212) 824-4961
EMAIL: ROBERT KEELER@ICEMILLER COM

October 31, 2025

**Via Electronic Mail (justin.gillett@knobbe.com)**
Mr. Sean Murray
Knobbe Martens Olson & Bear LLP
2040 Main St., 14th Fl.
Irvine, CA 92614

      ***RE:*** **Defendants' October 20 Letter re Search Terms**
         *National Steel Car Limited v. FreightCar America, Inc.*, Civ. No. 24-00594

Dear Sean,

We write in response to your October 30 letter regarding search terms (the "Letter"). As an initial matter, FreightCar makes repeated misstatements and misrepresentations in the Letter, presumably to force a discovery dispute between the parties in lieu of negotiating in good faith.

For example, the Letter asserts that NSC has not provided hit counts for FreightCar's proposed search terms for NSC's ESI. This is incorrect, as NSC provided those hit counts in its September 29 correspondence. Conversely, FreightCar has yet to provide hit counts for NSC's proposed search terms, despite NSC's repeated requests that it do so. *See* 2025.09.29 Letter from Keeler to J.Gillett; 2025.09.22 Letter from Keeler to J.Gillett.

As another example, FreightCar accuses NSC of "tearing up" an agreement regarding FreightCar's search term No. 3. However, no such agreement ever existed. It was FreightCar that requested the parties table that term and committed to providing NSC with a list of RFPs that seek information captured by this term, something it has not done. *See* 2025.09.22 Letter from Keeler to J.Gillett.

Judge Burke's October 17, 2025 Order (D.I. 147) directed the parties to verbally meet and confer regarding FreightCar's proposed terms. Yet, the Letter presents a series of ultimatums with no request to meet and confer, despite NSC's repeated attempts to initiate such discussions. *See* 2025.10.24 Email from Adams to J.Gillett; 2025.10.26 Email from Adams J.Gillett.

Regardless, in the interest of resolving these issues in good-faith, NSC responds to the Letter as follows and looks forward to discussing these matters with FreightCar on Monday.

**FreightCar's Search Terms for NSC's ESI**

Terms 1 and 2b

As stated in NSC's September 29 Letter, these terms would require NSC to review nearly 90,000 and nearly 130,000 documents, respectively. This is plainly an undue burden, particularly given the extensive discovery NSC has already provided. The fact that FreightCar would have to review 70,000 documents IF it agrees to run NSC's term 4 is of no moment. NSC would still be

required to review three times as many documents. And, to be clear, NSC does not wish to force FreightCar to review 70,000 documents either. FreightCar's ultimatum that NSC accept its "narrowed" versions of these terms is unreasonable.

Please refer to NSC's September 29 Letter, which includes NSC's compromise offers regarding these terms. If those offers are unacceptable, then please provide FreightCar's proposal to narrow these terms. We look forward to discussing the same during our meet and confer.

Terms 3 and 7

In the spirit of compromise, NSC agrees to run these terms.

Term 8

Please refer to NSC's September 29 Letter, which includes NSC's compromise offer regarding this term. If that offer is unacceptable, then please provide FreightCar's proposal to narrow this term.

**NSC's Search Terms for FreightCar's ESI**

Term 1

FreightCar agreed to run this term during the parties' September 26 meet and confer. However, FreightCar has not confirmed this in writing. Please do so. *See* 2025.09.29 Letter from Keeler to J.Gillett.

Terms 2-4

In the Letter, FreightCar states it is willing to run these terms on its ESI if NSC agrees to FreightCar's remaining terms. In light of NSC's compromises above, please confirm in writing whether FreightCar will do so. Otherwise, please provide narrowed alternatives and the promised hit counts, as discussed during the September 26 meet and confer. *See* 2025.09.29 Letter from Keeler to J.Gillett.


Regards,

Robert D. Keeler

2

# EXHIBIT 10

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Justin Gillett
Justin.Gillett@knobbe.com

November 5, 2025

**VIA EMAIL**

Safet Metjahic
Robert D. Keeler
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036

Kenneth Sheehan
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001

Re:     *National Steel Car Limited v. FreightCar America, Inc.*, No. 1:24-cv-00594-JLB-CJB (D. Del.)

Counsel:

We write regarding search terms following the parties' latest conference to discuss that topic, on November 4.

### I.        Final Proposed Compromise

In its October 30 letter, FreightCar America proposed a compromise to resolve the parties' disputes regarding FreightCar America Terms 1, 2b, and 7-8 and NSC Terms 3-4.  During the parties' latest conference, NSC rejected that proposal without offering an alternative compromise.  NSC stated it would provide a final compromise offer by November 6.  We look forward to receiving that final proposal.

### II.       Search Terms for NSC's ESI

#### A. NSC's Search Terms

<u>NSC Term 1.</u>  NSC confirmed during our latest conference that it is running the following modified version of this term.

```
P6030* OR P-6030*
```

<u>NSC Term 11.</u>   NSC agreed to supplement this term with `OR "12/816,660" OR "12/559,065" OR "12559065"`.  NSC then proposed modifying the term to replace the slash character with a space character based on its representation that an Everlaw search for a space captures a slash.  That agreed supplement and proposed modification result in the following amended term.

```
"8166892" OR "8,166,892" OR "12 780,741" OR "2011 0041724" OR "20110041724" OR
"8132515" OR "8,132,515" OR "12816,660" OR "12816660" OR "12 816,660" OR "2010
0251922" OR "20100251922" OR "2678447" OR "2678605" OR "12559,065" OR "12
559,065" OR "12559065" OR "200405.00128" OR "200405.00139" OR "Railroad gondola
car structure and mechanism therefor"
```

As I noted during our latest conference, NSC's September 22 letter identifies a "final term 11" that omits `OR "12816,660" OR "12816660" OR "12559,065" OR "12559065"`.  Please confirm NSC will run the full amended term identified above, rather than the "final term 11" identified in NSC's September 22 letter.

# Knobbe Martens

### B.  FreightCar America's Search Terms 1, 2b, and 8

FreightCar America has proposed narrowed versions of Terms 1, 2b, and 8 that appear in its October 30 letter.

FCA Term 1.  During the parties' September 26 conference, NSC stated the term "`Freight Car`" accounts for half the hits in the narrowed term and that the term `CN*` returns false hits in email headers.  Thus, FreightCar America suggested during that conference that NSC check hit counts for replacing those terms with "`Freight Car America`" and `CN` (without an asterisk).  NSC agreed but never provided those hit counts.  Rather than focus on false hits, NSC proposed excluding likely relevant documents.  For example, NSC proposed narrowing Term 1 to exclude documents referencing FreightCar America or its railcars, which NSC agreed to search for and produce, merely because they do not also explicitly reference "`Duluth`" OR `Minnesota OR Wisconsin OR` "`ore car`".  During the parties' latest conference on November 4, NSC stated replacing the term "`Freight Car`" with "`Freight Car America`" did not significantly reduce hits.  NSC further stated it would investigate a way to avoid false hits for the term `CN*` appearing in email headers and report back by November 6.  Please do so.

FCA Term 2b.  During the parties' September 26 conference, NSC reported false hits for only the term `CN*`.  Thus, during that conference, FreightCar America asked NSC to check hit counts for removing the asterisk from that term.  NSC agreed but never provided those hit counts.  Again, rather than focus on false hits, NSC proposed excluding likely relevant documents.  NSC proposed narrowing Term 2b to exclude, for example, documents regarding CN's complaints about hinge failure on the 2009 NSC Jennies, documents noting what CN "requires," all documents involving or referencing CN that do not explicitly reference `Duluth OR` "`ore car`", and all documents from 2007 and 2018 (during which time NSC states it was bidding to supply jennies to CN).

FCA Term 8.  NSC stated during the parties' September 26 conference that Term 8 should be tied to the patents at issue.  But NSC then proposed further narrowing that would have the opposite effect.  NSC proposed removing the search terms "`freight car`" OR "`gondola car`", even though the asserted patents reference those terms numerous times, including that the patents "relate[] to the field of railroad ***freight cars***, and, in particular to rail road ***gondola cars***."  (*E.g.*, '515 Patent at 1:19-20.)  NSC then proposed adding terms requiring every search hit to reference (`Duluth OR` "`CN`" OR "`Canadian National`"), even though the asserted patents never reference those terms.

### C.  NSC's Non-Email ESI

NSC has not confirmed that it will comply with Default Standard ¶ 5(b) by applying the parties' search terms to the non-custodial data sources it identified under Default Standard ¶ 3(b).  Please confirm NSC will do so.

### III.  Search Terms for FreightCar America's ESI

### A.  NSC's ¶ 5(b) Responsive Search Terms

NSC Term 1: `550043*`.  FreightCar America agreed to run this term based on NSC's agreement to remove quotation marks and add wildcards in NSC's first search term regarding the order number for NSC's 2009 jenny.

NSC Term 2: (`NSC OR` "`National Steel Car`") `W/15 patent*`.  FreightCar America offered to run this search-term language and NSC agreed.

NSC Term 3: (`DMIR OR` "`Duluth Missabe and Iron Range`" `OR` "`ore car`") `AND (CN OR` "`Canadian National`" `OR @cn.ca`).  This term is overbroad and leads to false hits.  For example, the term captures documents in which the terms referencing the DMIR or ore car are far away from any reference to CN and have nothing to do with CN.  To exclude those false hits, FreightCar America proposed the following modification and re-urged that proposal during the parties' latest conference.  Please let us know whether NSC agrees.

> (`DMIR OR` "`Duluth Missabe and Iron Range`" `OR` "`ore car`") ~~`AND`~~ `W/5` (`CN OR` "`Canadian National`" `OR @cn.ca`)

# Knobbe Martens

NSC Term 4: (Inspect* OR report) AND ("NSC" OR "National Steel Car" OR CN OR "Canadian National" OR DMIR OR "Duluth Missabe and Iron Range" OR "ore car"). This term hits on more than seventy thousand documents.  During the parties' latest conference, FreightCar America proposed running the following modified version.  Please let us know whether NSC agrees.

> (Inspect* OR report) AND (~~"NSC" OR "National Steel Car" OR CN OR "Canadian National" OR~~ DMIR OR "Duluth Missabe and Iron Range" ~~OR "ore car"~~)

Sincerely,

Justin Gillett

# EXHIBIT 11

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Justin Gillett
Justin.Gillett@knobbe.com

November 25, 2025

**VIA EMAIL**

Safet Metjahic
Robert D. Keeler
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036

Kenneth Sheehan
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001

Re:    *National Steel Car Limited v. FreightCar America, Inc.*, No. 1:24-cv-00594-JLB-CJB (D. Del.)

Counsel:

We write in response to NSC's November 6 and 20 letters regarding search terms.

## I.    Search Terms for NSC's ESI

### A.    FreightCar America's Search Terms 1, 2b, and 8

FCA Term 1.  NSC still does not report hit counts for replacing the terms "`Freight Car`" and `CN*` with "`Freight Car America`" and `CN` (without an asterisk), despite NSC's promise on September 26 to do so.  NSC also failed to investigate and report a way to avoid false hits for the term `CN*` appearing in email headers, despite its promise to do so by November 6.  While hit counts are not dispositive of whether requested discovery is proportioned to the needs of the case, it is puzzling that NSC has proposed exchanging hit counts but then failed follow through on promises to provide hit counts.  NSC has now changed tack and proposes arbitrarily narrowing this search term to exclude relevant documents referencing FreightCar America or its railcars if they do not explicitly reference all three of the following: (1) CN, (2) jennies / ore cars, and (3) another term such as presentation or report.  FreightCar America cannot agree.

FCA Term 2b.  Here, NSC has failed to provide promised hit counts for replacing the term `CN*` with `CN` (without an asterisk), despite NSC's agreement on September 26 to do so, and now proposes to withhold relevant documents that do not reference all three of the following: (1) CN, (2) open-top hoppers / ore cars, and (3) another term such as problem or hinge.  FreightCar America cannot agree.

FCA Term 8.  As stated during the parties' September 2 conference, the first portion of this term limits the search to the type of railcar, and the second term targets documents discussing the advantages the car provides over prior cars.  NSC does not explain the basis for its November 6 proposal, which would exclude relevant documents referencing improvements or advantages to freight cars, as well as all search hits from January 1 to May 17, 2024.  FreightCar America cannot agree.

### B.    NSC's Non-Email ESI

NSC stated during the parties' September 2 conference that the non-custodial ESI it collected and reviewed was from only a subset of the non-custodial data sources it identified under Default Standard ¶ 3(b).  Please confirm NSC will apply search terms to the remaining non-custodial data sources it identified, as Default Standard ¶ 5(b) requires.

# Knobbe Martens

### II.    Search Terms for FreightCar America's ESI

#### A.  NSC's ¶ 5(b) Responsive Search Terms 3 and 4

NSC's November 6 letter falsely states FreightCar America refused to provide hit counts for NSC's original terms and the proposed alternatives it listed.  On the contrary, during the parties' September 26 conference, FreightCar America reported original search terms 3 and 4 hits on more than 18,000 and 71,000 documents, respectively.  During the parties' November 4 conference, FreightCar America reported that its proposed alternative search term 3 hits on more than 7,000 documents.  Proposed alternative search term 4 hits on more than 1,000 documents.

#### B.  NSC's Proposed Search Terms Withheld Until November 20

NSC waited until November 20, 2025, to ask FreightCar America to run four additional search terms.  Please explain why NSC believes it is acceptable to propose new search terms after the deadline for the parties to substantially complete their document productions.

Sincerely,

Justin Gillett

# EXHIBIT 12

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Justin Gillett
Justin.Gillett@knobbe.com

December 4, 2025

**VIA EMAIL**

Safet Metjahic
Robert D. Keeler
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036

Kenneth Sheehan
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001

Re:    *National Steel Car Limited v. FreightCar America, Inc.*, No. 1:24-cv-00594-JLB-CJB (D. Del.)

Counsel:

We write following the parties' conference of counsel on December 4, 2025.

## I.    NSC's Response to FreightCar America Interrogatory No. 6

This interrogatory asks NSC to identify all features in its 2009 jennies that it contends are improvements over prior rail cars. FreightCar America indicated it would table this issue if NSC confirmed it is aware of no such improvements that have not already been identified in NSC's responses. NSC said it would consider that proposal.

## II.    Search Terms for NSC's ESI

### A.    FreightCar America's Search Terms 1, 2b, and 8

FCA Term 1.  FreightCar America's proposed narrowed version appears below.

```
("Freight Car" OR FreightCar* OR FCA*) AND ("Canadian National" OR CN* OR
presentation* OR slide* OR report* OR inspect* OR "site visit" OR analy*
OR compar*)
```

FreightCar America said it would propose a narrower version of this term if NSC reported hit counts for the individual words in the second parenthetical. NSC agreed to do so. It would also be helpful if you reported hit counts for the term if the asterisk is removed from `CN*`.

FCA Term 2b.  FreightCar America agreed to NSC's proposed narrowed version of this term:

```
("Canadian National" OR CN*) AND (("open hopper"~3) OR "ore car" OR jenn*)
AND (presentation* OR slide* OR problem* OR hinge* OR require* OR want*
OR prefer*) (date ranges 1/1/2007-9/11/2009 and 1/1/2018-12/31/2023)
```

FCA Term 8.  FreightCar America's proposed narrowed version appears below.

```
(jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND
(improve* OR advantage*)
```

INTELLECTUAL PROPERTY + TECHNOLOGY LAW | knobbe.com

# Knobbe Martens

NSC agreed to report hit counts for this term (i) without `gondola car` and (ii) without `freight car` OR `gondola car`.

### III.   Search Terms for FreightCar America's ESI

#### A.   NSC's ¶ 5(b) Responsive Search Terms 3 and 4

<u>NSC Term 3.</u>  FreightCar America agreed to run this term.

> (DMIR OR "Duluth Missabe and Iron Range" OR "ore car") AND (CN OR "Canadian National" OR @cn.ca)

<u>NSC Term 4.</u>  FreightCar America agreed to run one of the two versions of this term proposed in NSC's December 3 letter.  FreightCar America will run the following term:

> (Inspect* OR report) AND ("NSC" OR "National Steel Car" OR CN OR "Canadian National") AND (DMIR OR "Duluth Missabe and Iron Range" OR "ore car")

<u>NSC Terms 5-7.</u>  FreightCar America agrees to run these terms.

<u>NSC Term 8.</u>  FreightCar America would agree to run this term if NSC also runs the term as FreightCar America's tenth search term.

### IV.   NSC's Responses to FreightCar America's Second Set of RFPs (Nos. 61-63, 65-68, 70-1, 73-74)

My November 25 letter identified ambiguities in NSC's responses that suggest NSC is limiting the scope of its search and production.  During our conference today, NSC stated it would inform FreightCar America whether, for each of these RFPs, it limited the scope of its search/production and, if so, how it did so.

### V.   FCA0042807

FreightCar America agreed to confirm that its spam folder does not contain the quarantined email referenced in FCA0042807 or related emails.

Sincerely,

Justin Gillett

# EXHIBIT 13

ORAL ORDER: The Court, having reviewed the parties' joint motion regarding discovery disputes, (D.I. 85 ), accompanying letter briefs, (D.I. 86-90), and having discussed the issues with the parties on today's teleconference, hereby ORDERS as follows: (1) Plaintiffs shall search the custodial files of Ms. Platsis. Plaintiffs identified her--not only in the first case but in this case--as one of the 10 custodians most likely to have discoverable information in her possession. The Court presumes Plaintiffs did so after giving thoughtful consideration to the question, and Plaintiffs' explanation on today's call as to why she was removed from the list lacked detail and was not persuasive.; (2) Plaintiffs shall also search the custodial files of Mr. Davis. It appears undisputed that, at least through 2016, he served as the "head of the division leading the DuraSeal product line," (D.I. 87 at 1), and in light of the importance of competition-related issues to the case, he appears likely to have relevant electronic documents in his possession. The Court does not have enough information to determine that any such documents would be significantly cumulative of those in the possession of other proposed custodians.; (3) Plaintiffs shall utilize Defendant's proposed search terms, (D.I. 87, ex. 2 at 2), with the following exceptions/modifications: (a) As to category 3, if Defendant wishes for the search terms therein to be utilized, it must add at least one additional limiting term to each search term (e.g, "open surgery" AND "___").; (b) As to category 4, and in line with the guidance in Section 5(b) of the Default Standard, if Defendant wishes for "Micromedics" or "Hemaedics" or "Nordson" or "Fibrijet" to be utilized, it must add at least one additional limiting term to each such search term (e.g., "Hemaedics" AND "____"); and (c) After Plaintiffs actually run the searches in question, if they think that they can better demonstrate that review of some such search results would be unduly burdensome and expensive under Rule 26(b)(1), they can then further meet and confer with Defendant on the issue (and raise the issue with the Court if necessary).; (4) To the extent Defendant wishes to make any of the additions referenced in (3) it must provide Plaintiffs with its proposed additional limiters by no later than August 28, 2018.; and (5) Plaintiffs shall substantially complete their production of documents by September 21, 2018. The deadline for all parties to file motions to amend their pleadings or join parties is extended to November 20, 2018. Ordered by Judge Christopher J. Burke on 8/23/2018. (mlc) (Entered: 08/23/2018)

As of August 23, 2018, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*Confluent Surgical, Inc. et al v. HyperBranch Medical Technology, Inc.*
1-17-cv-00688 (DED), 8/23/2018, docket entry

# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATIONAL STEEL CAR LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>FREIGHTCAR AMERICA, INC.,<br><br>Defendant. | )<br>)<br>)   C.A. No. 1:24-00594-JLH-CJB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT FREIGHTCAR AMERICA, INC.'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 61–74)**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant FreightCar America, Inc. requests that, within thirty days of service of these papers, Plaintiff National Steel Car Limited produce at the offices of Defendant FreightCar America Inc.'s attorneys of record the documents and things described below and permit inspection, copying, testing, and sampling of the same.

**DEFINITIONS**

1.      The terms "National Steel Car," "NSC," "you," and "your" refer to Plaintiff National Steel Car Limited, including all past and present predecessors, successors, subsidiaries, affiliates, and parent companies, and all past and present directors, officers, partners, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

2.      "FreightCar America" refers to Defendant FreightCar America, Inc.

3.      "CN" refers to Canadian National Railway Company.

4.      "DMIR" refers to CN's Duluth, Missabe and Iron Range Railway.

5.      The phrase "the '892 patent" refers to U.S. Patent No. 8,166,892.

-1-

6.     The phrase "the '515 patent" refers to U.S. Patent No. 8,132,515.

7.     The "Asserted Patents" refers collectively to the '892 and '515 patents and all other patents asserted in this action.

8.     A "Jenny" refers to a railcar in an open-top hopper with bottom discharge configuration.

9.     The term "NSC Jennies" refers collectively to the Jennies NSC has designed, developed, built, and/or sold.

10.     The term "2009 NSC Jennies" refers collectively to the Jennies NSC conceived, designed, developed, made, offered for sale, sold, and/or imported for use on the DMIR in or around 2009, and any other NSC Jennies having the same or a similar design, including but not limited to the Jennies referenced in paragraph 12 of NSC's First Amended Complaint (D.I. 19).

11.     The term "2024 NSC Jennies" refers collectively to the Jennies NSC conceived, designed, developed, made, offered for sale, sold, and/or imported in connection with CN seeking to purchase new jennies for use by DMIR in or around 2018 to 2024, and any other NSC Jennies having the same or a similar design, including but not limited to the Jennies NSC designed, developed, made, offered for sale, sold, and/or imported in connection with the activities referenced in paragraphs 20–28 of NSC's First Amended Complaint (D.I. 19).

12.     The term "2009 NSC-CN Bid" refers to your attempts in and around 2009 to win a contract from CN to supply Jennies for use on the DMIR.

13.     The term "2018-2024 NSC-CN Bid" refers to your attempts between 2018 and 2024 to win a contract from CN to supply Jennies for use on the DMIR.

-2-

14.    The term "instrumentality" includes any apparatus, product, system, process, method, disclosure, or act, as well as any event or thing that can disclose, constitute a sale or offer for sale of, infringe, practice, or otherwise embody a patent claim.

15.    "Patented Instrumentality" refers to an instrumentality that practices or embodies, or satisfies the limitations of, any claim of an Asserted Patent or that can be used to practice, or to satisfy the limitations of, any claim of an Asserted Patent.

16.    A patent document (e.g., patent or application) is "Related" to another patent document if (1) one patent document claims priority to the other, (2) a third patent document exists to which the two patent documents both claim priority, or (3) the two patent documents overlap in disclosed or claimed subject matter and overlap in inventors, applicants, or assignees.

17.    A "Related Patent" is any U.S. or foreign patent or patent application that is Related to an Asserted Patent.

18.    The term "person" shall mean any natural person or any business, legal, or governmental entity or association, and the acts of a non-natural person shall include acts taken on its behalf by its directors, officers, members, employees, representative, agents, or attorneys.

19.    The term "document" includes everything covered by the terms *document* and *electronically stored information* as used in Rule 34 of the Federal Rules of Civil Procedure; includes everything covered by the terms *writing*, *recording*, and *photograph* as used in Rule 1001 of the Federal Rules of Evidence; refers to the original and all copies, and any non-identical copies; includes written, printed, typed, and visually or aurally reproduced material of any kind; and includes electronically stored information of any sort.

20.    The terms "device," "thing," and "item" mean all tangible objects of any type, composition, construction, or nature.

21.    The term "communication" includes all communications of any sort between persons and entities, such as (but not limited to) written, electronic, oral, telephonic, and nonverbal communications, as well as all documents evidencing a communication.

## INSTRUCTIONS

If you object to producing any requested item to FreightCar America's attorneys but are willing to make the original item available for inspection at another location, then please mark that item with a unique production number, and in your response, please state that the item is available for inspection, identifying the item both by a description and its production number.  FreightCar America reserves its right to disagree with your proposal for inspection and to pursue production of any such item consistent with its original request.

If you withhold any information called for by these requests because you contend the information is privileged, protected as work product or trial-preparation material, or otherwise protected from discovery, then please identify the withheld information in a privilege log that complies with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION 61**

Communications with customers or potential customers discussing the Asserted Patents and/or patented features.

**REQUEST FOR PRODUCTION 62**

Communications with customers or potential customers discussing the 2009 NSC Jennies or other NSC Jenny.

**REQUEST FOR PRODUCTION 63**

Detailed NSC annual profit and loss statements for 2018–2026.

**REQUEST FOR PRODUCTION 64**

Valuations of any Asserted Patent or of any collection of patents that includes one or more Asserted Patents.

**REQUEST FOR PRODUCTION 65**

Transaction data for sales of any NSC railcar from 2018–2026, including contract date, invoice date, invoice number, customer, model, quantity, type, price, costs of goods sold, manufacturing site, order date, ship date, and ship-to location.

**REQUEST FOR PRODUCTION 66**

Forecasts or financial assessments related to any bid covering the 2009 NSC Jennies or other NSC Jenny since 2007.

**REQUEST FOR PRODUCTION 67**

Forecasts and budgets for NSC's railcar-manufacturing segment and/or company as of 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025, and 2026.

**REQUEST FOR PRODUCTION 68**

Forecasts and budgets for production of NSC railcars for each NSC plant (e.g., Hamilton, Ontario) as of 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025, and 2026.

**REQUEST FOR PRODUCTION 69**

Monthly headcount for each NSC plant (e.g., Hamilton, Ontario) from 2018–2026.

**REQUEST FOR PRODUCTION 70**

Manufacturing and production data for each NSC plant (e.g., Hamilton, Ontario) from 2018–2026 showing the number of railcars NSC manufactured each month.

**REQUEST FOR PRODUCTION 71**

Competitive assessments, analyses, or communications discussing Greenbrier, ARI, Trinity, or any other competitor for the sale of railcars.

**REQUEST FOR PRODUCTION 72**

Assessments, analyses, and communications regarding the ARI design used on the DMIR, including, but not limited to, similarities, differences, performance, quality, and customer concerns.

**REQUEST FOR PRODUCTION 73**

Assessments, analyses, and communications regarding any suspected patent infringement by a competitor other than FreightCar America, including, but not limited to, by ARI.

**REQUEST FOR PRODUCTION 74**

Warranty and service transaction data for all NSC Jennies, including customer, date of work, railcar number, location, designation as warranty or service work, type of repair, reason for repair, cost of service, and the party that incurred the expense of the repair.

-7-

Dated: September 16, 2025

*Of Counsel*

Brian C. Horne (*Pro Hac Vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 601-1263
Brian.Horne@knobbe.com

Sean M. Murray (*Pro Hac Vice*)
Justin J. Gillett (*Pro Hac Vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Sean.Murray@knobbe.com
Justin.Gillett@knobbe.com

PHILLIPS, MCLAUGHLIN & HALL, P.A.

By: */s/ David A. Bilson*
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE  19806-4204
Telephone:  (302) 655-4200
Facsimile:  (302) 655-4210
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Attorneys for Defendant
FreightCar America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, a true and correct copy of the within document was served on the following counsel of record at the addresses in the manner indicated:

**VIA EMAIL:**

| | |
|---|---|
| John W. Shaw<br>Andrew E. Russell<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>arussell@shawkeller.com | Safet Metjahic<br>Robert D. Keeler<br>ICE MILLER LLP<br>1500 Broadway, Suite 2900<br>New York, NY 10036<br>(212) 824-4940<br>Metiahic@icemiller.com<br>Robert.Keeler@icemiller.com<br><br>Kenneth Sheehan<br>Kevin Adams<br>ICE MILLER LLP<br>200 Massachusetts Ave NW, Suite 400<br>Washington, DC 20001<br>Ken.sheehan@icemiller.com<br>Kevin.adams@icemiller.com |

Dated:  September 16, 2025

*/s/ David A. Bilson*
David A. Bilson (#4986)

-8-

# EXHIBIT 15

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATIONAL STEEL CAR LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-00594-JLH-CJB |
| | ) | |
| FREIGHTCAR AMERICA INC., | ) | |
| FREIGHTCAR NORTH AMERICA, | ) | |
| INC., JAC OPERATIONS, INC. and | ) | |
| FCA-FASEMEX LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF NATIONAL STEEL CAR LIMITED'S OBJECTIONS AND
RESPONSES TO DEFENDANT FREIGHTCAR AMERICA, INC.'S SECOND SET
OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 61-74)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.1 of the District of Delaware Local Civil Rules, Plaintiff, National Steel Car Limited ("NSC"), hereby responds and objects to Defendant FreightCar America Inc.'s ("FreightCar") first set of Requests for Production of Documents and Things served on December 19, 2024 ("Requests").

Discovery is ongoing in this case, and Plaintiff's objections will be based on, and therefore necessarily limited by, the records and information still in existence, presently recollected, and thus far discovered in the course of searching for responsive documents. Plaintiff is continuing its investigation and discovery and therefore reserves the right to produce any subsequently-discovered facts, documents, or information that may be responsive to the Requests for production of documents. Plaintiff reserves the right to supplement these objections and to supplement its production(s) as necessary to comply with the requirements of Fed. R. Civ. P. 26(e).

All objections as to privilege, immunity, relevance, authenticity, or admissibility of any information or documents herein are expressly reserved.

None of the responses or objections to any Request are a direct or indirect admission (i) of the truth or accuracy of any statement or characterization asserted in any Request or by the parties in any pleading or other filing with the Court; (ii) of the validity of any objection to any Request propounded in this action; or (iii) that any discovery Request propounded in this action is wholly or partially objectionable under any applicable law or rules.

To the extent that Plaintiff responds to any one of the Requests by stating that Plaintiff will produce non-privileged documents or is searching for documents, Plaintiff does not represent that any documents actually exist or are within its possession, custody, or control, but rather that Plaintiff will make a good faith search and attempt to ascertain whether documents responsive to the Request exist. Plaintiff will produce existing, responsive, non-privileged documents where indicated in the specific objections and responses herein, in accordance with Fed. R. Civ. P. 34(b)(2)(B).

In the event of a discovery dispute, Plaintiff's counsel is prepared to meet with Defendant's counsel to discuss and, if possible, resolve any disputes that may arise concerning the meaning, scope, and relevance of the Requests or the adequacy of Plaintiff's objections and responses thereto.

**<u>OBJECTIONS TO THE DEFINITIONS AND INSTRUCTIONS</u>**

Plaintiff objects to the Definitions and Instructions to the extent that they seek to impose obligations greater than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and any other applicable laws or rulings of this Court.

1.      Plaintiff objects to the definition of the terms "National Steel Car," "NSC," "you," and "your" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure, at least to the extent that it includes "all" "past and present predecessors, successors, subsidiaries, affiliates, and parent companies," and "all"

2

"past and present directors, officers, partners, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities."

2.      Plaintiff objects to the definition of the term "NSC Jenny" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure, at least because it includes Jennies that are irrelevant and not proportional to the needs of to this action.

3.      Plaintiff objects to the definition of the term "2009 NSC Jennies" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure, at least because it includes Jennies that are irrelevant and not proportional to the needs of to this action.

4.      Plaintiff objects to the definition of the term "2024 NSC Jennies" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure, at least because it includes Jennies that are irrelevant and not proportional to the needs of to this action.

5.      Plaintiff objects to the definition of the term "instrumentality" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure, at least to the extent that it purports to reach an ultimate legal conclusion.

6.      Plaintiff objects to the definition of the term "Patented Instrumentality" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure, at least to the extent that it purports to reach an ultimate legal conclusion.

7.      Plaintiff objects to the definition of the term "Related" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least to the extent that it purports to reach an ultimate legal conclusion and at least because

the phrase "the two patent documents overlap in disclosed or claimed subject matter and overlap in inventors, applicants, or assignees" is vague and ambiguous.

8.      Plaintiff objects to the definition of the term "person" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least because the phrase "the acts of a non-natural person shall include acts taken on its behalf by its directors, officers, members, employees, representative, agents, or attorneys" is vague and ambiguous and requires legal conclusions.

9.      Plaintiff objects to the definition of the term "document" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least because it includes "all copies, and any non-identical copies; includes written, printed, typed, and visually or aurally reproduced material of any kind; and includes electronically stored information of any sort."

10.      Plaintiff objects to the definition of the terms "device," "thing," and "item" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least because it includes "all tangible objects of any type, composition, construction, or nature."

11.      Plaintiff objects to the definition of the term "communication" as overly broad, unduly burdensome, vague, and beyond the requirements of the Federal Rules of Civil Procedure at least because it includes "all communications of any sort between persons and entities, such as (but not limited to) written, electronic, oral, telephonic, and nonverbal communications, as well as all documents evidencing a communication."

12.      Plaintiff objects to the instruction regarding producing items for inspection at least to the extent that it imposes a burden beyond that required by the Federal Rules of Civil

Procedure, any Order entered in this matter, or the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information.

13.     Plaintiff objects to the instruction regarding privilege logs at least to the extent that it imposes a burden beyond that required by the Federal Rules of Civil Procedure, any Order entered in this matter, or the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information.

14.     Plaintiff objects to each Request to the extent that it seeks to impose obligations greater than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and any other applicable laws or rulings of this Court. Plaintiff will produce relevant, nonprivileged documents responsive to Defendant's Requests for Production consistent with its obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and upon entry of a suitable protective order. Plaintiff will continue to search for non- privileged documents responsive to Defendant's Requests for Production. Plaintiff will produce any such documents that it locates which are in its possession, custody or control on a rolling basis. Plaintiff does not guarantee, however, that a diligent search of the documents in its possession, custody or control will result in the identification of all relevant, non-privileged documents for each of Defendant's Requests for Production, nor does any indication herein that Plaintiff will produce documents constitute any admission that such documents exist. Plaintiff understands that Defendant is not seeking documents consisting of, or reflecting, attorney-client communication or information protected by the work-product doctrine. To the extent that a Request seeks such documents, Plaintiff objects accordingly. Plaintiff objects to any Request to the extent it seeks information that is already in Defendant's possession, custody, or control. Plaintiff objects to any Request as premature to the extent it requests Plaintiff search for, identify, or produce

5

ESI. Plaintiff will produce non-privileged, responsive ESI in accordance with the deadlines set forth in any Order of the Court governing such production.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION 61

Communications with customers or potential customers discussing the Asserted Patents and/or patented features.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks communications regarding "patented features," which is undefined, is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiff objects to this Request to the extent it is not limited temporally. Plaintiff objects to this Request to the extent that "customers or potential customers" is undefined.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding communications with customers.

### REQUEST FOR PRODUCTION 62

Communications with customers or potential customers discussing the 2009 NSC Jennies or other NSC Jenny.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the

7

extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents regarding "other NSC Jenny" because "NSC Jennies," as defined, is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiff objects to this Request to the extent it is not limited temporally. Plaintiff objects to this Request to the extent that "customers or potential customers" is undefined.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding communications with customers.

**REQUEST FOR PRODUCTION 63**

Detailed NSC annual profit and loss statements for 2018–2026.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks "[d]etailed NSC annual profit or loss statements" because that is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiff objects to the term "detailed" as being vague and ambiguous. Plaintiff objects to this Request because the full scope of 2018-2026 is overly broad, unduly burdensome, and not proportional to the needs of the case.

8

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding information bearing on damages.

**REQUEST FOR PRODUCTION 64**

Valuations of any Asserted Patent or of any collection of patents that includes one or more Asserted Patents.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Plaintiff objects to this Request to the extent that it prematurely seeks expert discovery.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding information bearing on damages.

**REQUEST FOR PRODUCTION 65**

Transaction data for sales of any NSC railcar from 2018–2026, including contract date, invoice date, invoice number, customer, model, quantity, type, price, costs of goods sold, manufacturing site, order date, ship date, and ship-to location.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the

extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks "[t]ransaction data for sales of any NSC railcar from 2018–2026" because that is overly broad, unduly burdensome, and not proportional to the needs of the case.  Plaintiff objects to this Request because the full scope of 2018-2026 is overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding information bearing on damages.

**REQUEST FOR PRODUCTION 66**

Forecasts or financial assessments related to any bid covering the 2009 NSC Jennies or other NSC Jenny since 2007.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents regarding "other NSC Jenny" because "NSC Jennies," as defined, is overly broad, unduly burdensome, and not proportional to the needs of the case.  Plaintiff objects to this Request because the full scope of 2018-2026 is overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding information bearing on damages.

**REQUEST FOR PRODUCTION 67**

Forecasts and budgets for NSC's railcar-manufacturing segment and/or company as of 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025, and 2026.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request because "[f]orecasts and budgets for production" is overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it is not designed to show capacity to manufacture. Plaintiff objects to this Request because the full scope of 2018-2026 is overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding information bearing on damages.

**REQUEST FOR PRODUCTION 68**

Forecasts and budgets for production of NSC railcars for each NSC plant (e.g., Hamilton, Ontario) as of 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025, and 2026.

11

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request because "[f]orecasts and budgets for production" is overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it is not designed to show capacity to manufacture. Plaintiff objects to this Request because the full scope of 2018-2026 is overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding information bearing on damages.


**REQUEST FOR PRODUCTION 69**

Monthly headcount for each NSC plant (e.g., Hamilton, Ontario) from 2018–2026.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request because "the headcount for each NSC plant" is overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it is not designed to show capacity to manufacture. Plaintiff objects to this Request because the

12

full scope of 2018-2026 is overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding information bearing on damages.

**REQUEST FOR PRODUCTION 70**

Manufacturing and production data for each NSC plant (e.g., Hamilton, Ontario) from 2018–2026 showing the number of railcars NSC manufactured each month.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request because "the number of railcars NSC manufactured each month" is overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it is not limited to any particular railcars and/or not designed to show capacity to manufacture.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery regarding information bearing on damages.

13

**REQUEST FOR PRODUCTION 71**

Competitive assessments, analyses, or communications discussing Greenbrier, ARI, Trinity, or any other competitor for the sale of railcars.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request because "[c]ompetitive assessments, analyses, or communications discussing Greenbrier, ARI, Trinity, or any other competitor for the sale of railcars" is overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it is not limited temporally or to any particular railcars.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery.


**REQUEST FOR PRODUCTION 72**

Assessments, analyses, and communications regarding the ARI design used on the DMIR, including, but not limited to, similarities, differences, performance, quality, and customer concerns.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the

extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request because "the ARI design used on the DMIR" is undefined and vague and ambiguous as it does not identify any aspects of the design for which "[a]ssessments, analyses, and communications" are sought. Plaintiff objects to this Request because "similarities" and "differences" are terms of comparison, and it is not clear from the Request what is to be compared. Plaintiff objects to this Request because it is overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it is not limited temporally and because no "ARI design" is accused of infringement.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery.

**REQUEST FOR PRODUCTION 73**

Assessments, analyses, and communications regarding any suspected patent infringement by a competitor other than FreightCar America, including, but not limited to, by ARI.

**RESPONSE (October 16, 2025):**

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request because "any suspected patent infringement by a competitor" is overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it is not limited temporally or to any particular patents.

15

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request.

### REQUEST FOR PRODUCTION 74

Warranty and service transaction data for all NSC Jennies, including customer, date of work, railcar number, location, designation as warranty or service work, type of repair, reason for repair, cost of service, and the party that incurred the expense of the repair.

### RESPONSE (October 16, 2025):

Plaintiff incorporates its general objections and objections to the definitions and instructions as if the same were fully set forth herein. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that it seeks "all NSC Jennies" because "NSC Jennies," as defined, is overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, and to the extent that Plaintiff understands this Request, Plaintiff is willing to meet and confer regarding the scope of this Request and reciprocal discovery.

Dated: October 16, 2025

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

/s/ Robert D. Keeler

Safet Metjahic (*pro hac vice*)
Robert D. Keeler (*pro hac vice*)
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036
(212) 824-4940

Kenneth Sheehan (*pro hac vice*)
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 807-4055
*Attorneys for Plaintiff National Steel
Car Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2025, a true and correct copy of the within

document was served on the following counsel of record at the addresses in the manner

indicated:

**VIA EMAIL**:

Brian C. Horne (*Pro Hac Vice*)
KNOBBE, MARTENS, OLSON &
BEAR, LLP
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 601-1263
Brian.Horne@knobbe.com

John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE 19806-4204
Telephone: (302) 655-4200
Facsimile: (302) 655-4210
jcp@pmhdelaw.com
dab@pmhdelaw.com

Sean M. Murray (*Pro Hac Vice*)
Justin J. Gillett (*Pro Hac Vice*)
KNOBBE, MARTENS, OLSON &
BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Sean.Murray@knobbe.com
Justin.Gillett@knobbe.com

Dated: October 16, 2025

*/s/ Robert D. Keeler*
Robert D. Keeler

18

# EXHIBIT 16



| 1500 Broadway | 29th Floor | New York, NY 10036 |

WRITER'S DIRECT NUMBER: (212) 824-4961
EMAIL: ROBERT.KEELER@ICEMILLER.COM

November 19, 2025

**Via Electronic Mail (justin.gillett@knobbe.com)**
Mr. Justin Gillett
Knobbe Martens Olson & Bear LLP
2040 Main St., 14th Fl.
Irvine, CA 92614

> *RE:*   **NSC's Positions Regarding the Production of Financial Information**
> *National Steel Car Limited v. FreightCar America, Inc.*, Civ. No. 24-00594

Dear Justin,

Further to our November 4 meet and confer, we have spoken with our client and write to elaborate on NSC's positions regarding FreightCar's RFP Nos. 61-74.

**FreightCar's RFP No. 61**
"Communications with customers or potential customers discussing the Asserted Patents and/or patented features."

NSC has searched for and produced documents responsive to this Request.

**FreightCar's RFP No. 62**
"Communications with customers or potential customers discussing the 2009 NSC Jennies or other NSC Jenny."

NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case at least insofar as it relates to "other NSC Jenn[ies]." NSC will not search for or produce documents regarding "other NSC Jenn[ies]." NSC has produced documents regarding the 2009 NSC Jennies that are in NSC's possession and which were located after a reasonable search.

**FreightCar's RFP No. 63**
"Detailed NSC annual profit and loss statements for 2018–2026."

Although NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, and without waiving its right to object to any further production, NSC is willing to produce additional documents showing profit and loss statements for gondola railcars for the requested time period. Please let us know if FreightCar is willing to accept this offer to compromise on this issue.

**FreightCar's RFP No. 64**
"Valuations of any Asserted Patent or of any collection of patents that includes one or more Asserted Patents."

NSC has searched for and does not possess documents responsive to this Request.

**FreightCar's RFP No. 65**
"Transaction data for sales of any NSC railcar from 2018–2026, including contract date, invoice date, invoice number, customer, model, quantity, type, price, costs of goods sold, manufacturing site, order date, ship date, and ship-to location."

NSC has produced information responsive to this Request regarding the 2009 NSC Jennies at issue. Although NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs this case, and without waiving its rights to object to any further production, NSC is willing produce additional documents for gondola railcars for the requested time period, and is working to determine which categories of requested information this will include. Please let us know whether FreightCar is willing to accept this offer to compromise on this issue.

**FreightCar's RFP No. 66**
"Forecasts or financial assessments related to any bid covering the 2009 NSC Jennies or other NSC Jenny since 2007."

NSC has produced forecasts and financial assessments related to bids for railcars for use on the DMIR which were located after a reasonable search. NSC otherwise maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case insofar as it relates to "other NSC Jenn[ies]."

**FreightCar's RFP No. 67**
"Forecasts and budgets for NSC's railcar-manufacturing segment and/or company as of 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025, and 2026."

Although NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, and without waiving its right to object to any further production, NSC is willing to agree to produce additional documents showing market share and production for the requested time period. Please let us know whether FreightCar is willing to accept this offer to compromise on this issue.

**FreightCar's RFP No. 68**
"Forecasts and budgets for production of NSC railcars for each NSC plant (e.g., Hamilton, Ontario) as of 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025, and 2026."

Although NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, and without waiving its right to object to any further production, NSC is willing to agree to produce additional documents showing market share and production for the requested time period. Please let us know whether FreightCar is willing to accept this offer to compromise on this issue.

2

**FreightCar's RFP No. 69**
"Monthly headcount for each NSC plant (e.g., Hamilton, Ontario) from 2018–2026."

Notwithstanding that NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as a compromise NSC agrees to produce documents responsive to the full scope of this Request.

**FreightCar's RFP No. 70**
"Manufacturing and production data for each NSC plant (e.g., Hamilton, Ontario) from 2018–2026 showing the number of railcars NSC manufactured each month."

Notwithstanding that NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as a compromise NSC agrees to produce documents showing the number of railcars produced by NSC each month for the requested time period.

**FreightCar's RFP No. 71**
"Competitive assessments, analyses, or communications discussing Greenbrier, ARI, Trinity, or any other competitor for the sale of railcars."

NSC has already produced documents responsive to this request regarding competitor's sale of railcars for use on the DMIR. NSC otherwise maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case insofar as it seeks documents unrelated to the specialty railcars used on the DMIR and fails to define "or any other competitor."

**FreightCar's RFP No. 72**
"Assessments, analyses, and communications regarding the ARI design used on the DMIR, including, but not limited to, similarities, differences, performance, quality, and customer concerns."

We understand that the "ARI design used on the DMIR" refers to the railcars ARI sold to CN in or around 2011. In view of this understanding, and although NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as a compromise NSC will produce responsive, non-privileged documents that are located after a reasonable search.

**FreightCar's RFP No. 73**
"Assessments, analyses, and communications regarding any suspected patent infringement by a competitor other than FreightCar America, including, but not limited to, by ARI."

Notwithstanding that NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case insofar as it relates to patents other than the asserted patents, as a compromise, NSC will produce responsive, non-privileged documents regarding the asserted patents that are located after a reasonable search.

3

**FreightCar's RFP No. 74**

"Warranty and service transaction data for all NSC Jennies, including customer, date of work, railcar number, location, designation as warranty or service work, type of repair, reason for repair, cost of service, and the party that incurred the expense of the repair."

NSC maintains its objections to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case at least insofar as it relates to "all NSC Jennies." NSC will not search for or produce documents regarding "all NSC Jennies." NSC has produced documents responsive regarding the 2009 NSC Jennies at issue that are in NSC's possession and which were located after a reasonable search.

Regards,

Robert D. Keeler

4

# EXHIBIT 17

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Justin Gillett
Justin.Gillett@knobbe.com

November 25, 2025

**VIA EMAIL**

Safet Metjahic
Robert D. Keeler
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036

Kenneth Sheehan
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001

Re:     *National Steel Car Limited v. FreightCar America, Inc.*, No. 1:24-cv-00594-JLB-CJB (D. Del.)

Counsel:

We write regarding various discovery issues discussed in the parties' November 4 conference of counsel and/or NSC's letters dated November 6, 19, and 20.

## I.     NSC's Response to FreightCar America Interrogatory No. 6

The interrogatory asked NSC to identify any features in the patented railcars that were an improvement over prior jennies, and to explain how those features were allegedly developed to address the DMIR's unique dock requirements. In its November 6 letter, NSC stated that its August 15 supplemental response had provided a "full response" to this interrogatory.  However, during the parties' November 4 conference, NSC purported to reserve the right to later present evidence on features not included in its August 15 response.  For example, NSC stated it might attempt to rely on yet-unidentified "features, and/or the combination thereof, as claimed in the Asserted Patents" to distinguish the 2009 NSC Jennies over prior railcars.  NSC also stated it might attempt to explain its contention that allegedly "[u]nique requirements of docks on which the jennies would be used by DMIR in Two Harbors, Minnesota led NSC to innovate" an identified feature (D.I. 19 ¶ 13).  NSC's refusal to provide this information now is improper and requires the intervention of the Court.

## II.     NSC's Responses to FreightCar America's Second Set of RFPs (Nos. 61-74)

None of NSC's responses to FreightCar America's Second Set of Requests for Production state whether NSC will produce requested documents or whether any responsive materials are being withheld on the basis of an objection. Instead, each of NSC's responses states NSC would confer regarding the scope of the request and (for each except RFP 73) regarding "reciprocal discovery."  But during the parties' November 4 conference, NSC did not identify the scope of information it would agree to produce for any RFP.  Further, when asked during the conference to identify which NSC RFPs seek reciprocal discovery, NSC either conceded there were none or identified only RFPs for which FreightCar America already agreed to produce responsive documents.

<u>FCA RFP 61.</u>  This RFP seeks "[c]ommunications with customers or potential customers discussing the Asserted Patents and/or patented features."  When asked during the conference to identify which NSC RFPs seek reciprocal discovery, NSC identified only RFP 3, for which FreightCar America already agreed to produce responsive documents.  When asked during the conference, NSC did not state the scope of information it would agree to produce for this RFP.  NSC stated it would likely agree to produce the full scope and would confirm whether that is the case.  But NSC's November 19 letter is vague on that point, stating only that NSC "has searched for and produced documents responsive to this Request."

# Knobbe Martens

By December 1, please confirm that NSC agrees to search for and produce the full scope of this request, including any responsive documents it has not yet produced.

FCA RFP 62.  This RFP seeks "[c]ommunications with customers or potential customers discussing the 2009 NSC Jennies or other NSC Jenny."  When asked during the conference to identify which NSC RFPs seek reciprocal discovery, NSC identified only RFP 3, for which (as noted above) FreightCar America already agreed to produce responsive documents.  When asked during the conference, NSC did not state the scope of information it would agree to produce for this RFP.  NSC stated it would not produce the full scope and NSC refused identify any portion of the request for which it would withhold materials.  When asked to explain its objection that "'NSC Jennies,' as defined, is overly broad, unduly burdensome, and not proportional to the needs of the case," NSC stated the term is broader than patent-practicing products and encompass railcars NSC unilaterally deems irrelevant.  When asked to explain any burden associated with producing communications with customers or potential customers discussing an NSC Jenny, NSC stated only that it has many communications regarding every railcar it designs and sells.  When asked how many jennies NSC has designed, developed, built, and/or sold since 2009, NSC stated it did not know, and that it would provide that information to FreightCar America.  To date, NSC has not done so.  When asked to explain its objection that "'customers or potential customers' is undefined," NSC stated it is not relying on that objection.  NSC's November 19 letter states it is refusing to search for or produce communications with customers or potential customers discussing Jennies other than the 2009 NSC Jennies.  NSC's November 19 letter is otherwise vague on the scope of information it agrees to produce for this RFP, stating only that NSC "has produced documents regarding the 2009 NSC Jennies that are in NSC's possession and which were located after a reasonable search."

By December 1, please confirm that NSC agrees to search for and produce the full scope of "[c]ommunications with customers or potential customers discussing the 2009 NSC Jennies," including any responsive documents it has not yet produced, the full scope of such communications discussing any "other NSC Jenny," and identify how many jenny models NSC has designed, developed, built, and/or sold since 2009.

FCA RFP 63.  This RFP seeks "[d]etailed NSC annual profit and loss statements for 2018–2026."  NSC conceded during the conference that no NSC RFP seeks reciprocal discovery.  When asked during the conference, NSC did not state the scope of information it would agree to produce for this RFP.  NSC's counsel stated only that he needed to confer with his client to determine what scope NSC would agree to produce.  When asked to explain any burden associated with collecting NSC's yearly profit and loss statements, NSC stated only that it would need to pull them together.  When asked whether NSC prepared annual profit and loss statements for any of the requested years, NSC replied that it assumed so but would need to check.  To date, NSC has not confirmed the requested years 2018–2026 for which NSC prepared annual profit and loss statement.  When asked to explain its objection to "the term 'detailed' as being vague and ambiguous," NSC stated it is not relying on that objection.  When asked, NSC explained that its objection to "the full scope" refers to the timeframe 2018-2026 as opposed to, for example, the detail in the requested profit and loss statements.  NSC's November 19 letter proposes limiting its production to "additional documents showing profit and loss statements for gondola railcars for the requested time period."  But that proposal would exclude relevant information regarding, for example, NSC's incremental expenses and profits.

By December 1, please confirm that NSC agrees to search for and produce the full scope of this request, and identify which of the requested years 2018–2026 NSC prepared annual profit and loss statements.

FCA RFP 64.  This RFP seeks "[v]aluations of any Asserted Patent or of any collection of patents that includes one or more Asserted Patents."  NSC has not asserted (during the conference or otherwise) that any NSC RFP seeks reciprocal discovery.  When asked during the conference, NSC did not state the scope of information it would agree to produce for this RFP.  NSC's counsel stated he did not think there have been any responsive valuations but that he still needed to check with his client.  When asked to explain its objection to the RFP "to the extent that it prematurely seeks expert discovery," NSC stated this objection is limited to producing an expert's work.  NSC's November 19 letter represents NSC "does not possess documents responsive to this Request."

FCA RFPs 65-68.  These RFPs seek information regarding forecasts, transactions, and related topics.  NSC conceded during the conference that no NSC RFP seeks reciprocal discovery for any of RFPs 65-68.  When asked

# Knobbe Martens

during the conference, NSC did not state the scope of information it would agree to produce for any of RFPs 65-68. When asked, NSC explained that its objection to "the full scope" of RFPs 65-68 refers to the timeframe 2018-2026.

For RFP 65, NSC stated during the conference that it could run a report for the requested "[t]ransaction data for sales of any NSC railcar from 2018–2026." But NSC's November 19 letter proposes limiting its production to "documents for gondola railcars for the requested time period." NSC has not attempted to justify withholding transaction data for sales of NSC's non-gondola railcars. Further, NSC has not provided any reason to believe its proposal would provide sufficient data to enable FreightCar America to adjust NSC's forecast for the 2024 NSC Jennies.

By December 1, please confirm that NSC agrees to search for and produce the full scope of RFP 65, and identify how many gondola sales NSC made from 2018–2026.

For RFP 66, during the conference, NSC referenced its objection to producing documents related to bids covering "NSC Jenn[ies]" because that term is defined as "the Jennies NSC has designed, developed, built, and/or sold." When asked to provide lists of those jennies and bids since 2007 so the parties can evaluate burden, NSC did not state whether it agreed. To date, NSC has not provided those lists. Despite that failure, NSC's November 19 letter states it is refusing to search for or produce the requested forecasts or financial assessments related to bids covering NSC Jennies other than the 2009 NSC Jennies.

By December 1, please confirm that NSC agrees to search for and produce the full scope of RFP 66, and provide lists of NSC Jennies and bids covering them since 2007.

For RFPs 67-68, NSC's November 19 letter proposes limiting its production to "documents showing market share and production for the requested time period." But RFPs 67-68 seek "[f]orecasts and budgets." NSC's proposal does not address FreightCar America's need to adjust NSC's forecast for the 2024 NSC Jennies.

By December 1, please confirm that NSC agrees to search for and produce the full scope of RFPs 67-68.

FCA RFPs 69-70. These RFPs seek headcount and production information for NSC plants. NSC conceded during the conference that no NSC RFP seeks reciprocal discovery for either of RFPs 69-70. When asked during the conference, NSC did not state the scope of information it would agree to produce for either of RFPs 69-70.

For RFP 69, NSC stated during the conference it did not know the burden of producing "[m]onthly headcount for each NSC plant." NSC's November 19 letter states it "agrees to produce documents responsive to the full scope of this Request."

For RFP 70, NSC's November 19 letter proposes limiting its production to "documents showing the number of railcars produced by NSC each month for the requested time period." But NSC has not attempted to justify withholding manufacturing and production data "for each NSC plant," or even to identify whether NSC has any production facilities other than its plant in Hamiton, Ontario.

By December 1, please confirm that NSC agrees to search for and produce the full scope of RFP 70, and identify each NSC production facility.

FCA RFPs 71-72. These RFPs seek competitive assessments and similar documents. NSC conceded during the conference that no NSC RFP seeks reciprocal discovery for RFP 71. When asked during the conference to identify which NSC RFPs seek reciprocal discovery for RFP 72, NSC identified only RFPs 48 and 63, for which FreightCar America already agreed to produce responsive documents. NSC did not state the scope of information it would agree to produce for either of RFPs 71-72.

For RFP 71, when asked during the conference, NSC did not propose any temporal limitation or any limit to the subject railcars. During the conference, FreightCar America proposed limiting the subject railcars to Jennies. NSC has not directly addressed that proposal, whether during the conference or otherwise. In its November 19 letter, NSC objects to producing documents unrelated to those used on the DMIR. But NSC has not attempted to justify

# Knobbe Martens

withholding the requested documents related to other Jennies, which bear on issues including the value of the patented invention.

By December 1, please confirm that NSC agrees to produce the requested "[c]ompetitive assessments, analyses, or communications discussing Greenbrier, ARI, Trinity, or any other competitor" for the sale of Jennies, whether used on the DMIR or another rail line.

For RFP 72, NSC's November 19 letter states it "will produce responsive, non-privileged documents that are located after a reasonable search." FreightCar America thus understands NSC will search for and produce the full scope of RFP 72. If this is incorrect, then please inform us immediately.

FCA RFP 73.   This RFP seeks "[a]ssessments, analyses, and communications regarding any suspected patent infringement by a competitor other than FreightCar America, including, but not limited to, by ARI." NSC did not state the scope of information it would agree to produce for this RFP. NSC did not propose any temporal limitation. NSC's November 19 letter states it will produce responsive, non-privileged documents "regarding the asserted patents" that are located after a reasonable search.

By December 1, please confirm that NSC agrees to produce the requested non-privileged "[a]ssessments, analyses, and communications regarding any suspected patent infringement" of an asserted patent "by a competitor other than FreightCar America, including, but not limited to, by ARI."

FCA RFP 74.   This RFP seeks "[w]arranty and service transaction data for all NSC Jennies, including customer, date of work, railcar number, location, designation as warranty or service work, type of repair, reason for repair, cost of service, and the party that incurred the expense of the repair." When asked during the conference to identify which NSC RFPs seek reciprocal discovery, NSC identified only RFP 67, for which FreightCar America already agreed to produce responsive documents. When asked during the conference, NSC did not commit to provide a list of the jennies NSC has "designed, developed, built, and/or sold." NSC's November 19 letter states NSC refuses to search for or produce documents regarding "all NSC Jennies." But the letter is vague about the scope of information it agrees to produce, stating only that NSC "has produced documents responsive regarding the 2009 NSC Jennies."

By December 1, please confirm that NSC agrees to search for and produce the full scope of requested "[w]arranty and service transaction data" for the 2009 NSC Jennies, and provide the requested list of NSC jennies.

### III.      NSC Interrogatory No. 12

During the parties' November 4 conference,[1] FreightCar America explained that its response to NSC interrogatory 12 incorporates its response to NSC interrogatory 7. FreightCar America's response provides an appropriate level of detail. If NSC disagrees, then please provide its legal basis that more detail is appropriate.

### IV.      Metadata

NSC asked for the following information regarding photos in production volume FCA006: (1) custodian, (2) file path where they are kept, and (3) dates when they were taken. No single custodian keeps any of those photos. As to date and file path, the photos in the range FCA0001056–FCA0001496 are kept in the project folder for the accused product with the file paths ███████████████████████████████████ (FCA0001056–FCA0001235), ████████████████████████████ (FCA0001236–FCA0001463), and ████████████

---

[1] NSC's November 6 letter states that, during the November 4 conference, FreightCar America agreed to "revert by Friday, November 7" regarding interrogatory 12 and various other issues. But during the conference, NSC never asked for and FreightCar America never agreed to provide a response by that date. In the future, if NSC seeks a response by a certain date, it may ask either during the conference or in a letter. It is inappropriate to assert FreightCar America agreed to something the parties never discussed.

# Knobbe Martens

████████████████████████████ (FCA0001495–FCA0001496).  The photos in the range FCA0001517–FCA0001687 are kept in the Teams folder for the accused product with the file path ████████████

Regarding FreightCar America's CAD files, FreightCar America reminded NSC during the conference that FreightCar America produced a PDM spreadsheet (FCA0015685) reporting the dates and times each CAD version was created and last modified and the individual who created and last modified it.  FreightCar America asked that if NSC is interested in a particular part file, then please identify it.

## V.    Teams and WhatsApp Messages

NSC did not notify FreightCar America that it wished to discuss Teams messages during the parties' November 4 conference.  Thus, FreightCar America was not prepared to confer on that topic.  The parties did not discuss WhatsApp messages during the November 4 conference.  NSC reported it would not produce Teams messages.  NSC has not stated whether it will produce WhatsApp messages.

Please state whether NSC believes the parties are required to search for and produce Teams and WhatsApp messages and, if so, then provide the legal basis for that position.

## VI.    NSC RFP Nos. 3, 6, 15, 16, 17, 19, 20, 27, 28, 29, 30, 44, 46, 61, 62, and 66

FreightCar America has made a robust production in response to these RFPs.  This includes communications resulting from search terms that target the order and specification number for the accused products.  (*See* NSC search term 1 and FreightCar America search terms 1-5, 7, and 9-10.)  If additional keyword searching uncovers additional documents, then FreightCar America will produce them.

## VII.    FCA0042807

FCA0042807 is a February 10, 2023, email from Impact Spam with the subject line "Quarantine Digest."  The body of the email indicates that an email from ████████████████████████████ has been "Quarantined."  FreightCar America has performed a reasonable search for the quarantined email and has not identified it.

Sincerely,

Justin Gillett

# EXHIBIT 18

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Justin Gillett
Justin.Gillett@knobbe.com

December 4, 2025

**VIA EMAIL**

Safet Metjahic
Robert D. Keeler
Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY 10036

Kenneth Sheehan
Ice Miller LLP
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001

Re:     *National Steel Car Limited v. FreightCar America, Inc.*, No. 1:24-cv-00594-JLB-CJB (D. Del.)

Counsel:

We write following the parties' conference of counsel on December 4, 2025.

### I.     NSC's Response to FreightCar America Interrogatory No. 6

This interrogatory asks NSC to identify all features in its 2009 jennies that it contends are improvements over prior rail cars.  FreightCar America indicated it would table this issue if NSC confirmed it is aware of no such improvements that have not already been identified in NSC's responses.  NSC said it would consider that proposal.

### II.     Search Terms for NSC's ESI

### A.  FreightCar America's Search Terms 1, 2b, and 8

FCA Term 1.  FreightCar America's proposed narrowed version appears below.

```
("Freight Car" OR FreightCar* OR FCA*) AND ("Canadian National" OR CN* OR
presentation* OR slide* OR report* OR inspect* OR "site visit" OR analy*
OR compar*)
```

FreightCar America said it would propose a narrower version of this term if NSC reported hit counts for the individual words in the second parenthetical.  NSC agreed to do so.  It would also be helpful if you reported hit counts for the term if the asterisk is removed from `CN*`.

FCA Term 2b.  FreightCar America agreed to NSC's proposed narrowed version of this term:

```
("Canadian National" OR CN*) AND (("open hopper"~3) OR "ore car" OR jenn*)
AND (presentation* OR slide* OR problem* OR hinge* OR require* OR want*
OR prefer*) (date ranges 1/1/2007-9/11/2009 and 1/1/2018-12/31/2023)
```

FCA Term 8.  FreightCar America's proposed narrowed version appears below.

```
(jenny OR jennies OR "ore car" OR "freight car" OR "gondola car") AND
(improve* OR advantage*)
```

# Knobbe Martens

NSC agreed to report hit counts for this term (i) without `gondola car` and (ii) without `freight car` OR `gondola car`.

### III.    Search Terms for FreightCar America's ESI

#### A.  NSC's ¶ 5(b) Responsive Search Terms 3 and 4

NSC Term 3.  FreightCar America agreed to run this term.

> `(DMIR OR "Duluth Missabe and Iron Range" OR "ore car") AND (CN OR "Canadian National" OR @cn.ca)`

NSC Term 4.  FreightCar America agreed to run one of the two versions of this term proposed in NSC's December 3 letter.  FreightCar America will run the following term:

> `(Inspect* OR report) AND ("NSC" OR "National Steel Car" OR CN OR "Canadian National") AND (DMIR OR "Duluth Missabe and Iron Range" OR "ore car")`

NSC Terms 5-7.  FreightCar America agrees to run these terms.

NSC Term 8.  FreightCar America would agree to run this term if NSC also runs the term as FreightCar America's tenth search term.

### IV.    NSC's Responses to FreightCar America's Second Set of RFPs (Nos. 61-63, 65-68, 70-1, 73-74)

My November 25 letter identified ambiguities in NSC's responses that suggest NSC is limiting the scope of its search and production.  During our conference today, NSC stated it would inform FreightCar America whether, for each of these RFPs, it limited the scope of its search/production and, if so, how it did so.

### V.    FCA0042807

FreightCar America agreed to confirm that its spam folder does not contain the quarantined email referenced in FCA0042807 or related emails.

Sincerely,

Justin Gillett

# EXHIBIT 19



| 1500 Broadway | 29th Floor | New York, NY 10036 |

WRITER'S DIRECT NUMBER: (212) 824-4961
EMAIL: ROBERT.KEELER@ICEMILLER.COM

December 11, 2025

**Via Electronic Mail (justin.gillett@knobbe.com)**
Mr. Justin Gillett
Knobbe Martens
2040 Main St., 14th Fl.
Irvine, CA 92614

> **RE:**   *National Steel Car Limited v. FreightCar America, Inc.*, Civ. No. 24-00594

Dear Justin,

Thank you for the productive meet-and-confer on December 4. We write regarding that meet-and-confer and your December 4 correspondence concerning the same.

**FreightCar's Microsoft Teams and WhatsApp Messages**

At the December 4 meet-and-confer, FreightCar, for the first time, requested that NSC provide an authority supporting its position that FreightCar's Microsoft Teams and WhatsApp messages should be produced. NSC stated that discovery is broad, and that FreightCar's productions to date had already shown that relevant information is contained in FreightCar's identified custodians' Microsoft Teams and WhatsApp messages. *See* 2025.11.20 Letter from Keeler to J.Gillett re WhatsApp and Teams ESI; 2025.11.06 Letter from Keeler to J.Gillett re November 4 Meet and Confer.

Regardless, NSC provides the following authority to support its position that FreightCar must search and produce the Microsoft Teams and WhatsApp messages of its identified custodians:

- *RIG Consulting, Inc. v. Rogers*, 2025 WL 1349002 at *6 (W.D. Penn. May 8, 2025) (ordering production of Microsoft Teams messages).

- *Lashify, Inc. v. Qingdao Lashbeauty Cosmetic Co., Ltd.*, Civ. No. 6:22-cv-00776 (Dkt. 98) (ordering production of email and messaging platforms, including Skype, Zoom, WhatsApp, Microsoft Teams, Google Hangouts, Google Chat, Line, WeChat, KakaoTalk, Facebook Messenger, Telegram, Viber, Kik, Snapchat, Slack, Discord, and Instagram when Defendant's production did not include communications regarding their decision to copy Plaintiff's patent-practicing products).

- *Doe v. Carnival Corporation*, 2024 WL 4003709 (S.D. Fla. Feb. 22, 2024) (ordering production of WhatsApp messages).

- *Lubrizol Corporation v. International Business Machines Corporation*, 2023 WL 3453643 (N.D. Ohio May 15, 2023) (ordering production of slack conversations and Microsoft Teams messages).

Please confirm by Friday, December 12 that FreightCar will search its identified custodians' Microsoft Teams and WhatsApp messages.

**FreightCar's Interrogatory No. 6**

NSC appreciates FreightCar's explanation of the supplement it seeks to NSC's response to this Interrogatory. We are working with our client to determine whether an additional supplement to this Interrogatory is required and will revert promptly.

**FreightCar America's Search Terms for NSC's ESI**

Term 1

("Freight Car" OR FreightCar* OR FCA*) AND ("Canadian National" OR CN* OR presentation* OR slide* OR report* OR inspect* OR "site visit" OR analy* OR compar*)

At the December 4 meet-and-confer, FreightCar acknowledged that this term is unduly burdensome to the extent it would require NSC to review nearly 90,000 documents. As requested by FreightCar, the terms in the second clause were individually removed, in each instance resulting in a hit count that was over 80,000 documents with attachments, showing that no individual term in that clause is driving the hits. Accordingly, NSC respectfully requests that FreightCar reconsider NSC's proposed alternative for this term shown below.

("Freight Car America" OR FreightCar* OR FCA*) AND ("Canadian National" OR CN* OR presentation* OR memo* OR slide* OR report* OR inspect* OR "site visit" OR analy* OR compar*) AND (("open hopper"~3) OR "ore car" OR jenn*)

Term 2b

Thank you for agreeing with NSC's alternative for this term as proposed on December 3.

However, FreightCar's December 4 correspondence includes "CN*" as opposed to "CN" in the first clause of this term. For clarity, NSC will apply this term as it appears in its December 3 correspondence and shown below:

("Canadian National" OR CN) AND (("open hopper"~3) OR "ore car" OR jenn*) AND (problem* OR hinge* OR require* OR want* OR prefer*) for the time periods 2007.01.01-2009.09.11 and 2018.01.01-2023.12.31.

Term 8

The modified term (jenny OR jennies OR "ore car" OR "freight car" ~~OR "gondola car"~~) AND (improve* OR advantage*) results in nearly 17,000 hits with attachments. This term remains overly burdensome and NSC cannot agree to run it on its ESI.

The modified term (jenny OR jennies OR "ore car" ~~OR "freight car" OR "gondola car"~~) AND (improve* OR advantage*) results in nearly 5,000 hits with attachments. NSC agrees to run this term on its ESI.

**NSC's Search Terms for FreightCar's ESI**

Term 3

(DMIR OR "Duluth Missabe and Iron Range" OR "ore car") AND (CN OR "Canadian National" OR @cn.ca)

Thank you for agreeing to run this term.

Term 4

(Inspect* OR report) AND ("NSC" OR "National Steel Car" OR DMIR OR "Duluth Missabe and Iron Range" OR "ore car")

(Inspect* OR report) AND ("NSC" OR "National Steel Car" OR CN OR "Canadian National") AND (DMIR OR "Duluth Missabe and Iron Range" OR "ore car")

Thank you for indicating that you are willing to run one of the two narrowed alternatives for this term as proposed by NSC in its December 3 correspondence. However, as requested in that correspondence, and again during the December 4 meet-and-confer, please provide hit counts for both of NSC's proposals so that NSC can adequately consider this compromise.

Terms 5-7

Thank you for agreeing to run these terms.

Term 8

FreightCar's offer to run this term if NSC agrees to also run the same on its ESI is not acceptable. As stated during the parties' December 4 meet-and-confer, FreightCar is only entitled to ten search terms under the Default Standard. NSC has agreed to run eight of FreightCar's proposed terms (Nos. 2a, 2b, 3, 4, 5, 6, 7, and 9) and FreightCar has two proposals outstanding (Nos. 1 and 8). Therefore, FreightCar does not have a "tenth term" as FreightCar purports in its December 4 correspondence.

However, if FreightCar wishes that NSC run this term in lieu of one of FreightCar's outstanding proposals NSC is agreeable to considering that compromise.

**NSC's Responses to FreightCar's Second Set of RFPs (Nos. 61-63, 65-68, 70-71, and 73-74)**

No. 61
"Communications with customers or potential customers discussing the Asserted Patents and/or patented features."

NSC has stated twice that it has already searched for and produced documents responsive to this Request. *See* 2025.11.19 Letter from Keeler to J.Gillett; 2025.12.03 Letter from Keeler to J.Gillett. NSC's search was reasonable and was not limited to any subset of documents responsive to this Request.

No. 62
"Communications with customers or potential customers discussing the 2009 NSC Jennies or other NSC Jenny."

NSC stated in its November 19 correspondence that it limited its search for documents responsive to this Request to the 2009 NSC jennies and other jennies for use on the DMIR. *See* 2025.11.19 Letter from Keeler to J.Gillett. This search has resulted in the production of countless documents directly bearing on the issues in this matter; other "Jennies" as defined by FreightCar lack connection to this case. NSC stands on its objections that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information for "other NSC Jenn[ies]."

Nos. 63
"Detailed NSC annual profit and loss statements for 2018–2026."

NSC produced statements showing revenues and costs of goods sold for flats, gondolas, hoppers, sparger hoppers, and intermodal railcars for the requested time period. *See* NSC063623-63626, NSC063635-063650. NSC also produced a breakdown of revenues and costs of goods sold for each order of gondola railcars for the requested time period. *See* NSC063627-63634. Please confirm that these documents satisfy what was requested by FreightCar, as other documents have attenuated relevance.

No. 65
"Transaction data for sales of any NSC railcar from 2018–2026, including contract date, invoice date, invoice number, customer, model, quantity, type, price, costs of goods sold, manufacturing site, order date, ship date, and ship-to location."

NSC has produced information responsive to the full scope of this Request for the 2009 NSC jennies. *See* 2025.11.19 Letter from Keeler to J.Gillett. Regarding other NSC railcars, NSC stands on its objections that this Request as overly broad, unduly burdensome, and not proportional to the needs of this case. However, NSC has produced additional documents responsive to this Request regarding gondola railcars for the requested time period. *See, e.g.,* NSC063627-63634.

<u>No. 66</u>
"Forecasts or financial assessments related to any bid covering the 2009 NSC Jennies or other NSC Jenny since 2007."

NSC stated in its November 19 correspondence that it limited its search for documents responsive to this Request to the 2009 NSC jennies and other bids regarding jennies for use on the DMIR. *See* 2025.11.19 Letter from Keeler to J.Gillett. NSC has produced documents showing forecasts and actual sales for such railcars. NSC stands on its objections that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information for "other NSC Jenn[ies] since 2007."

<u>No. 67</u>
"Forecasts and budgets for NSC's railcar-manufacturing segment and/or company as of 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025, and 2026."

NSC stated in its November 19 correspondence that it has already produced budgets and forecasts related to bids for railcars for use on the DMIR which were located after a reasonable search. *See* 2025.11.19 Letter from Keeler to J.Gillett. Despite FreightCar's lack of reply to this correspondence, in an effort to reach a compromise, NSC has produced documents showing market share and production for the requested time period. *See* NSC063651, NSC063653-63654. NSC stands on its objections that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information for NSC's entire "railcar-manufacturing segment" or "company." Further, NSC represents that financial documents produced are standalone for its manufacturing segment. *See, e.g.,* NSC063623-63650.

<u>No. 68</u>
"Forecasts and budgets for production of NSC railcars for each NSC plant (e.g., Hamilton, Ontario) as of 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025, and 2026."

NSC stated in its November 19 correspondence that it has already produced budgets and forecasts related to bids for railcars for use on the DMIR which were located after a reasonable search. *See* 2025.11.19 Letter from Keeler to J.Gillett. NSC stands on its objections that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information for all "NSC railcars" and each "NSC plant." However, in an effort to reach a compromise, NSC has produced documents showing market share and production for the requested time period. *See* NSC063651, NSC063653-63654.

<u>No. 70</u>
"Manufacturing and production data for each NSC plant (e.g., Hamilton, Ontario) from 2018–2026 showing the number of railcars NSC manufactured each month."

NSC has produced information for the number of railcars manufactured on a monthly basis for the requested time period. *See* NSC063653-63654.

<u>No. 71</u>
"Competitive assessments, analyses, or communications discussing Greenbrier, ARI, Trinity, or any other competitor for the sale of railcars."

NSC stated in its November 19 correspondence that it has already produced any assessments, analysis, or communications regarding competitor's sale of railcars for use on the DMIR. *See* 2025.11.19 Letter from Keeler to J.Gillett. NSC stands on its objections that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information for the sale of all railcars.

<u>No. 73</u>
"Assessments, analyses, and communications regarding any suspected patent infringement by a competitor other than FreightCar America, including, but not limited to, by ARI."

NSC stated in its November 19 correspondence that it will produce responsive, non-privileged documents regarding the Asserted Patents that are located after a reasonable search. *See* 2025.11.19 Letter from Keeler to J.Gillett. NSC stands on its objections that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information for patents other than the Asserted Patents.

<u>No. 74</u>
"Warranty and service transaction data for all NSC Jennies, including customer, date of work, railcar number, location, designation as warranty or service work, type of repair, reason for repair, cost of service, and the party that incurred the expense of the repair."

NSC stated in its November 19 correspondence that it has produced responsive, non-privileged documents regarding NSC's 2009 patent-practicing jennies that were located after a reasonable search. *See* 2025.11.19 Letter from Keeler to J.Gillett. NSC stands on its objections that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information for "all NSC Jennies."

**NSC's Interrogatory No. 12**

During the November 4 meet and confer FreightCar promised to confirm whether it will supplement its response to this Interrogatory. *See* 2025.11.06 Letter from Keeler to J.Gillett re Meet and Confer. FreightCar has not done so. Please do so by Friday, December 12.

**IFO, VOB, and MPG Files**

FreightCar has produced several IFO, BUP, and VOB/MPG files which appear to be copied from two separate DVDs with respective Bates ranges of FCA0082727-0082744 and FCA0082749-0082770. However, FreightCar did not provide metadata regarding custodian or file path for these files, so it is impossible for NSC to know where these files came from or how they are grouped. Please confirm whether NSC is correct that the above-listed files are from two separate DVDs and please provide the name and source of the same. If preferrable, please produce ISO files of those DVDs and confirm to which the above-referenced Bates-ranges they apply.

Regards,
ICE MILLER LLP

Robert D. Keeler

# EXHIBIT 20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| NATIONAL STEEL CAR LIMITED, | ) ) ) | C.A. No. 1:24-00594-JLH-CJB |
| Plaintiff, | ) ) ) |  |
| v. | ) ) |  |
| FREIGHTCAR AMERICA, INC., FREIGHTCAR NORTH AMERICA, LLC, JAC OPERATIONS INC., and FCA-FASEMEX, LLC | ) ) ) ) ) |  |
| Defendants. | ) ) ) |  |

### [PROPOSED] ORDER

WHEREAS, the Court having reviewed the motion to compel (the "Motion") filed by Defendants FreightCar America, Inc., FreightCar North America, LLC, JAC Operations, Inc., and FCA-FASEMEX, LLC (collectively, "FreightCar America") and having considered the parties' respective positions set forth in their discovery dispute letter submissions, IT IS HEREBY ORDERED that the Motion is GRANTED.

IT IS FURTHER ORDERED that:

1.      Within 28 days of the date of this Order, Plaintiff National Steel Car Limited ("NSC") shall produce documents located using the following search terms to "search (i) the non-custodial data sources [NSC] identified in accordance with paragraph 3(b); and (ii) emails and other ESI maintained by the custodians [NSC] identified in accordance with paragraph 3(a)" of this District's Default Standard for Discovery, Including Discovery of Electronically Stored Information.

Search Term 1: (“Freight Car” OR FreightCar* OR FCA*) AND (“Canadian National” OR CN* OR presentation* OR slide* OR report* OR inspect* OR “site visit” OR analy* OR compar*)

Search Term 8: (jenny OR jennies OR “ore car” OR “freight car” OR “gondola car”) AND (improve* OR advantage*)

2.      Within 7 days of the date of this Order, NSC shall provide a response to FreightCar America Request for Production Nos. 61-63, 66-68, 71, and 73-74 that states, for each request, whether and how NSC has limited its search for or production of responsive documents.  In addition, within 14 days of the date of this Order, NSC shall produce to FreightCar America documents responsive to the full scope of those requests, including unredacted documents responsive to Request for Production No. 63.

IT IS SO ORDERED THIS _____ day of _____, 2025.

_____
The Honorable Christopher J. Burke
United States Magistrate Judge